(No. 22853.─

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* CHARLES PIZZO, Plaintiff in Error.

*Opinion filed December 19, 1935.*

Rocco DESTEFANO, and ODE L. RANKIN, for plaintiff in error.

OTTO KERNER, Attorney General, THOMAS J. COURTNEY, State's Attorney, J. J. NEIGER, and A. B. DENNIS, (EDWARD E. WILSON, HENRY E. SEYFARTH, and JOHN T. GALLAGHER, of counsel,) for the People.

Mr. CHIEF JUSTICE STONE delivered the opinion of the court:

Plaintiff in error, with Charles Hrica, Stockton Darnele, Frank Longo and George Constantino, was indicted in the criminal court of Cook county on a charge of robbery while armed with a gun. The indictment against Hrica was stricken, with leave to re-instate. Constantino entered a plea of guilty and was placed on probation. Darnele was arrested and while in custody was extradited to

the State of California and the indictment against him was stricken. Longo was not apprehended. On trial plaintiff in error was found guilty of robbery with a gun and sentenced to the penitentiary from one year to life. He has prosecuted this writ of error.

The People's evidence showed that shortly after midnight, July 20, 1933, one Harper J. Gayman, in the employ of W. H. Dennis, of Palo, Illinois, while driving a truck-load of hogs which he was taking to market in Dennis' truck, was held up in Chicago by three men with guns, who compelled him to leave the truck. One of the men drove away with it. Gayman was forced to get into an automobile with two of the men and after being driven around for about twenty minutes was released. He identified Darnele as one of the men who held him up.

Hrica, Constantino, Leon Pierce and Donald Gray testified for the People. All were accomplices, though Pierce and Gray had not been indicted. At the time of the trial Pierce was under arrest in Milwaukee charged with another offense. The substance of the testimony of these four witnesses was, that prior to the date of the robbery plaintiff in error, at his home in North Riverside, asked Hrica to get some hogs for him, which the latter agreed to do and solicited Constantino, Darnele and Longo to assist him. Constantino talked with plaintiff in error at Tony Reusch's tavern in Chicago, in the presence of Hrica, Darnele and Sam Pizzo, brother of plaintiff in error. During this conversation Hrica asked Constantino if he wanted to go out and "hijack" a load of hogs, to which the latter agreed. These witnesses testified that plaintiff in error paid them $60, which was divided among the four of them. Pierce testified that he drove the truck-load of hogs to the farm of Sam Pizzo, brother of plaintiff in error, at La-Grange, Wisconsin, where the hogs were transferred to another truck and driven to Milwaukee, and that he, Pierce, later drove the Dennis truck to Marengo, Illinois, and left

it by the side of the road. He testified that he called plaintiff in error and asked him to send someone for him and that Gray came and got him. Gray testified that after Pierce started for Wisconsin with the truck-load of hogs, he, Gray, went to his home, and later, with plaintiff in error and witness' daughter, he followed the truck to the farm of Sam Pizzo, where they unloaded the hogs; that plaintiff in error, his brother Sam, one Ferdinand Parker and one A. J. Fuerstenberg were present when the hogs were re-loaded on another truck, and that he, the witness, took them to Milwaukee and sold them at the stock yards, receiving about $335 therefor, which he gave to plaintiff in error. He identified a check as the one he had received for the hogs. The People's evidence also shows that the truck in which the hogs were taken from the farm of plaintiff in error's brother to Milwaukee was owned by plaintiff in error.

Fuerstenberg was an employee on the Pizzo farm in Wisconsin. He stated he was paid by plaintiff in error. At the time of the trial he was not employed at this farm. He testified that on some day in July or August, 1933, (the exact date he could not remember,) Pierce came to the farm with a load of hogs, which were transferred to plaintiff in error's truck and taken away; that plaintiff in error, his brother Sam, Pierce, Gray and Gray's daughter were at the farm when the hogs were so transferred and that Pierce and Gray were at the farm when the witness quit work there. Gayman, the driver of the truck, also identified a tire which the testimony showed was taken from the truck belonging to Dennis and later found at Elkhorn, Wisconsin.

Plaintiff in error testified that he knew Hrica and Gray but did not know Constantino, Longo or Darnele, and that he had seen Pierce on the farm several times. On cross-examination he was shown a picture which he said was of himself, Hrica and another man whom he did not know.

This picture showed plaintiff in error, Hrica and Longo in a boat. Pizzo testified that they were out fishing and had been all day; that a man came along and got into the boat, and he did not remember what Hrica called him. In rebuttal Hrica testified the picture was of Pizzo, Longo and himself, and that Pizzo, Longo, Constantino and Darnele rode up to Sam Pizzo's farm together. Pizzo denied all knowledge of or implication in the crime or the receipt of the proceeds for the sale of the hogs. He testified that he was not in Wisconsin between July 6 and August 1. He also denied that he paid Fuerstenberg for his labor or employed him on the farm but admitted that he had seen him there. He denied having seen Gray at the farm but admitted that he saw his daughter there. He testified that on July 20 he was at a night club operated by his brother Pete, from 9:00 o'clock P. M. until 4:00 A. M. the following day. Pete Pizzo corroborated this statement. Nine witnesses testified to the good reputation of Pizzo as a law-abiding citizen.

The errors assigned are that the accused was not proved guilty beyond a reasonable doubt; that prejudicial error was committed by the trial court in the admission and rejection of testimony, and that the State's attorney made improper argument; also that errors were committed in the instructions to the jury.

It is argued in support of plaintiff in error's first contention that all of the testimony of the People came from confessed accomplices; that their testimony concerning conversations with Pizzo were vague as to the time when they took place, and that there is nothing in the testimony to tend to establish that he assisted or abetted in the crime of robbery. The guilt or innocence of the accused was a question of fact for the jury. This court will not reverse its finding unless the evidence, considered as a whole, does not establish the guilt of the accused beyond a reasonable doubt. (*People* v. *Fontana*, 356 Ill. 461.) An examina-

tion of the evidence discloses that the witnesses testifying against Pizzo, other than Fuerstenberg, though accomplices, gave clear testimony connecting Pizzo with the robbery. The witness Fuerstenberg, who was not an accomplice, corroborated them. He, so far as the record shows, was a disinterested witness. His testimony was that Pierce came to the Sam Pizzo farm with a load of hogs, which were re-loaded in a truck by plaintiff in error and taken to Milwaukee, and that at this time plaintiff in error, his brother Sam, Pierce, Gray and the latter's daughter were present. While the testimony of accomplices is to be scrutinized carefully in the light of the fact that they are accomplices, the testimony of Fuerstenberg is a clear corroboration of their evidence. We are unable to say, therefore, that the jury were not justified in finding plaintiff in error guilty.

Plaintiff in error's counsel complains of leading questions asked and improper remarks made by the State's attorney which he contends were prejudicial to the accused. An examination of the record shows that in most instances objections to leading questions were sustained, and we are unable to say that prejudicial error resulted from the character of questions asked. The same is true of remarks made by the State's attorney.

Concerning the objection that incompetent testimony was admitted, counsel points out that testimony of plaintiff in error's arrest in Wisconsin was incompetent, particularly as to certain conversations with him or in his presence. It is argued that this testimony permitted the jury to infer that plaintiff in error was arrested for some other crime. It is also objected that it was incompetent to permit the sheriff to testify that he made a search of the premises and found a truck tire which the People proved belonged to the Dennis truck. We have examined this testimony. The substance of the sheriff's evidence is that he arrested plaintiff in error and Miss Gray and that he found a tire

which the witness Gayman testified had been taken off the Dennis truck. We are unable to see wherein such evidence was prejudicial.

It is also complained that plaintiff in error was unduly limited in his evidence of alibi, and that his witness was not permitted to testify that he was in the night club at the time of this robbery. This witness, however, testified that plaintiff in error was not away from the night club on the night of July 19 or 20. No injury could have resulted from the ruling of the court sustaining objection to the question asked.

It is also urged that the court erred in instructing the jury, and certain instructions are referred to. Rule 27 of this court provides°that in criminal cases the court shall give instructions to the jury in accordance with section 67 of the Civil Practice act. The court complied with the act as it stood before amendment in 1935. The record shows that at the close of all the evidence, and before the court instructed the jury, counsel for plaintiff in error offered nine suggested instructions. No specific objections to the given instructions here complained of were made at any time before judgment, and under section 67 of the Civil Practice act as then in force the objections here made were therefore not properly preserved for review. We therefore do not pass upon the correctness of them. *People* v. *Polak,* 360 Ill. 440; *People* v. *Peck,* 358 id. 642.

Plaintiff in error complains here that suggested instruction offered by him were not incorporated in the narrative instructions given. Examination of the record discloses that the suggested instructions, in so far as they correctly presented the law, were, in effect, incorporated in the instructions given.

The record contains no error requiring reversal of the judgment. The evidence justifies the findings and the verdict of the jury, and the judgment is affirmed.

*Judgment affirmed.*