(No. 23425.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* CORDELES ISBELL, Plaintiff in Error.

*Opinion filed April 24, 1936.*

ORR and WILSON, JJ., dissenting.

WENDELL E. GREEN, for plaintiff in error.

OTTO KERNER, Attorney General, THOMAS J. COURTNEY, State's Attorney, and A. B. DENNIS, (EDWARD E. WILSON, JOHN T. GALLAGHER, and RICHARD H. DEVINE, of counsel,) for the People.

Mr. JUSTICE FARTHING delivered the opinion of the court:

Cordeles Isbell was convicted by a jury in the criminal court of Cook county on a charge of manslaughter by means of an automobile, and sentenced to the penitentiary. He has sued out this writ of error.

Since the case will have to be reversed for errors in giving instructions and for improper remarks on the part of the State's attorney in his argument to the jury, it is not necessary to review the evidence in great detail.

About 3:00 o'clock on Sunday afternoon, September 1, 1935, the plaintiff in error (hereinafter called the defendant) left his home at 4833 Langley avenue, Chicago, and drove to Eighty-third street and Lake Shore Drive. After watching tennis games there for more than an hour he obtained gasoline at a station where he had credit and was returning home on Cottage Grove avenue at about 5:30 o'clock. About midway of the 6400 block, he saw the deceased, Mrs. Anna Johnston, and her three children, on the east side of the street. They were half a block away and were between the north cross-walk of Sixty-fourth street, and a car parked about 30 feet north of that walk

on the east side of Cottage Grove avenue. It was daylight and there was no other traffic on either of the streets. Defendant's view was not obstructed. He says he slowed his car to about 15 miles per hour as he came into the intersection; that one of the children darted in front of him; that his foot slipped off the brake onto the accelerator and his car shot forward at 25, 30 or 35 miles per hour. Before he could regain control, the car struck the mother and two of the children, and Mrs. Johnston was dragged 50 or 60 feet before the car stopped.

The testimony of the People's witnesses is in sharp conflict with that of the defendant as to the speed of the car, his having liquor on his breath, and his being intoxicated. However, their testimony as to the speed of his car, 35 to 45 miles per hour, the character of the neighborhood, the presence of a drug store, cafe and theater in the 6300 block on Cottage Grove avenue, the crowd coming out of the theater, the fact that it was daylight and that the defendant drove straight ahead without turning his car to the right or left, together with the dents in the fender, grill and radiator shell, the bent headlight, broken lens and light bulb and his defective brakes, supplied sufficient proof to sustain the jury's verdict and we would not substitute our judgment in such a case for that of the jury if the sufficiency of proof were the only question in this case. *People* v. *Pizzo*, 362 Ill. 194; *People* v. *Wynekoop*, 359 id. 124.

The defendant objects to the admission of the testimony of officer Mullaney. This witness was permitted to testify to the distance in which automobiles equipped with four-wheel brakes could be stopped when driven at greater speeds than 20 miles per hour, and also to tell what distance was required in which to stop defendant's Hudson sedan, on a pavement similar to that at the scene of the accident on the evening of September 1, 1935. Defendant was chargeable with knowledge of the condition of the brakes on his automobile. Evidence was admissible to show

that those brakes were defective. The fact that the Motor Vehicle act only provides that an automobile equipped with four-wheel brakes must be capable of being stopped in a distance of 30 feet, when driven at a speed of 20 miles per hour, does not preclude testimony as to the distances. required in which to stop the average car so equipped, when driven at higher rates of speed. It does not render inadmissible or incompetent testimony which is the result of tests made of defendant's automobile on a pavement similar to that at the scene of the accident, at speeds of 25, 30 or 35 miles per hour.

The next objection is that Norma Johnston, a pupil in the fifth grade, who was nine years old in December, 1935, was an incompetent witness. Her answers show that she understood the moral obligation to tell the truth and they indicated that she had sufficient intelligence, for her testimony was corroborated by that of other witnesses. Counsel for defendant did not cross-examine her as to her understanding of the nature of an oath. In *People* v. *Lewis,* 252 Ill. 281, we said: "Intelligence, ability to comprehend the meaning of an oath and the moral obligation to speak the truth, and not age, are the tests by which the competency of a child to give testimony is determined." We can not say that the trial court abused its discretion by permitting this witness to testify.

The defendant complains that the fifth given instruction is an abstract statement of law, that it assumes facts which are controverted, and that it is ambiguous and misleading. He also says that by its last sentence, the jury were, in effect, directed to find the defendant guilty. The instruction reads:

"5. The court instructs the jury that the gist of the offense in a case of this character is criminal negligence. Gross negligence is that which has in it the element of recklessness. Wanton negligence, as applied to the running of motor vehicles, implies disregard of the rules of diligence

and reckless heedlessness of consequences. Ordinary negligence denotes a negative quality in the attention and discharge of a duty. Criminal liability cannot be predicated upon every act carelessly performed merely because such carelessness results in the death of another. Negligence, to become criminal, must necessarily be reckless or wanton and of such a character as to show an utter disregard of the safety of others under circumstances likely to cause injury. The negligence involved, and which must be proven beyond a reasonable doubt, is criminal negligence. Where a person with wilful and wanton negligence drives his automobile in a reckless manner, in utter disregard of the safety of others, and runs over another and kills him or her, even though unintentionally, it will be manslaughter."

This instruction is an abstract statement of law. Instructions should not only be applicable to the facts in evidence, but they should make application of the law they purport to state, to the facts. The instructions should also have demanded that the jury find from the evidence, beyond a reasonable doubt, that the defendant was guilty of the acts charged and that were stated in the instructions to constitute guilt, before the jury made a finding of guilt. *People* v. *Lehner,* 335 Ill. 424, 430.

We have examined the refused instructions Nos. 1, 2 and 3, as to the refusal of which defendant complains. It is not necessary to set them out. As to No. 1, "such means at his command," in the second part of the instruction, has no "means" preceding it. This makes the instruction vague and indefinite. The instruction would also have absolved the defendant from guilt if the proof showed that he drove at a high and dangerous rate of speed, notwithstanding the fact that his brakes were bad, if he used the means at his command to prevent injuring the deceased.

Refused instruction No. 2 was based upon a theory similar to that of self-defense and was improper. It is open to the further criticism that it assumes, without requiring

it to be shown by the evidence, that the defendant acted as a reasonable person would act.

Refused instruction No. 3 is in the language of the statute, to the effect that service brakes should be adequate to stop an automobile, when traveling at 20 miles per hour, within a distance of 30 feet. It was properly refused. Defendant's brakes did not stop his car in a distance of 30 feet, and his own evidence shows that when he struck the deceased he was traveling at a greater speed than 20 miles per hour. There was no evidence upon which to base this instruction.

The last contention of defendant is that the State's attorney committed prejudicial error by his inflammatory and wrongful argument to the jury. In it he referred to the defendant as "insane," a "nut," a "maniac," a "killer, cool and brute depressive," and after the court had sustained an objection to his statement that "manslaughter is probationary," he repeated the statement in substance, thereby making another objection and another ruling necessary. The court failed to rule on the objection to the terms applied to the defendant, but the objection was made. This language was prejudicial. There is no reference in the evidence as to insanity, and it is not a logical deduction to make from the testimony before us. There is but little difference between the terms applied to this defendant, quoted above, and the term "murdering driver" which we condemned in *People* v. *Schneider,* 360 Ill. 43, 54.

The giving of the fifth instruction, coupled with the improper argument of the State's attorney, constituted prejudicial error. The judgment is therefore reversed and the cause is remanded to the criminal court of Cook county for a new trial.                    *Reversed and remanded.*

ORR and WILSON, JJ., dissenting.