THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
THOMAS FEIERABEND, Defendant-Appellant.

First District (2nd Division)    No. 79-2413

Opinion filed July 21, 1981.

James J. Doherty, Public Defender, of Chicago (John Lanahan, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Marcia B. Orr, Adrienne Noble Nacev, and Ann L. Benedek, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE HARTMAN delivered the opinion of the court:

Defendant, a member of the "Gaylords" street gang (hereinafter Gaylords), admittedly shot and killed the victim, James Hoffman, while the latter was engaged in a fight with several other Gaylords inside a pizza parlor in Chicago. Defendant was charged by information with murder and armed violence, convicted of both in a jury trial, and sentenced to 22

years in the penitentiary. On appeal, defendant identifies reversible error in that: based upon his justification defense, he was not proven guilty of murder beyond a reasonable doubt; the trial court gave the jury an accountability instruction; the trial court refused to give a provocation instruction; the trial court advised the jury of the noncapital nature of the case; and defendant was improperly convicted of both murder and armed violence. For the following reasons, we affirm.

Brian Dolan testified for the State that on July 23, 1978, he was working at a pizza parlor located on North Rockwell Avenue in Chicago. At 2:20 a.m., while four customers, identified as the victim, Milorid Denic, "So-so" Munoz, and Michael Lewandowski, were playing pinball machines, six men in their early twenties entered, two of whom were carrying baseball bats. They asked if any customers were members of a local street gang called the "Popes" (hereinafter Popes). Dolan was busy behind the counter when a brawl suddenly erupted. As Dolan exited a rear door of the building to summon the owner, he heard a gunshot. He continued to the owner's house, told him of the occurrences, returned to the parlor and found the victim lying on the floor. When the fight began, a pizza roller was behind the counter, lying on top of the dough rolling machine and a police photograph, taken immediately after the shooting, depicted the roller still there. On cross-examination, Dolan testified that defendant was not among the six persons he saw walk into the restaurant. He did not remember where the roller was located in the restaurant when he returned after the shooting. On redirect, he testified that the photographs previously identified accurately portrayed the condition of the store when he returned.

Chicago Police Officer Michael Wick testified that on July 23, 1980, he and his partner were on duty in an unmarked car when he saw defendant, whom he identified in court, walk down the 3300 block of North Kenneth Avenue carrying a package. After defendant looked in the officers' direction, he disappeared from view for one second, and then returned shortly afterwards without the package. Officer Wick and his partner searched the area thereafter and found the package which contained a pistol and 18 bullets. They arrested defendant in nearby Kilbourn Park, advised him of his *Miranda* rights and, upon searching him, found an expended shell casing in his pocket. Wick identified the pistol, bullets and casing in court.

Raymond Cisco, an attorney now in private practice, testified that he had been an assistant state's attorney in 1978, assigned to the Felony Review Unit. He interviewed defendant on the afternoon of July 24, 1978, and identified the transcript of that interview which was received in evidence as a State's exhibit without objection. Defendant's statement was read into the record and his version of the occurrence was that on the

morning of July 23, 1978, defendant was with several friends who he identified by their nicknames as "Chief," "Mouse" and "Little Satan." Defendant drove those three from Kilbourn Park to the vicinity of Wilson and Rockwell Streets. Other friends, all members of the Gaylords, identified as "Doc" Reamer, "Wolfman," and "Eddie," drove to this intersection in another car, to "spray paint" and "party." Several members got out of the cars and sat on the porch of a nearby house. When two teenage males came walking down the street, Reamer punched one of them in the face and a fight ensued. Defendant was not involved. After the fight, defendant got out of his car, and all the Gaylords except defendant and Mouse ran towards the pizza parlor at the corner of Lawrence and Rockwell. Some of them were saying that they were "going in there for Popes." Mouse drove defendant's car toward the parlor and double parked it about 100 feet away. Defendant walked behind the group of Gaylords heading towards the parlor. When he arrived, he saw "a big fight starting up inside." The Gaylords "threw" baseball bats and Reamer was fighting with the victim "one on one." The victim had a pizza roller in one hand. He was trying to rip Reamer's sweater off. Defendant then shot the victim. The victim "hit Doc [Reamer] and I shot him." No one had menaced or hit defendant and he was not fighting with anyone. Everyone then ran out of the pizza parlor to their cars and drove back to Kilbourn Park.

Charles McFadden testified that he and a friend, Andy Gebabi, were on their way home from the pizza parlor involved at about 2 a.m. on July 23 when 10 or 15 teenagers accosted them at the corner of Lawrence and Rockwell. Several of them grabbed and beat him and Andy, and took Andy's gold chain. Someone said, "We are the Gaylords, don't forget it." He and Andy escaped, ran to his sister's house, and were then taken to a hospital. On cross-examination, he testified that defendant was not with this group.

Police Sergeant Donald Smith, a ballistics expert, testified that in his opinion the bullet found in the victim's body was fired from the gun recovered by Officer Wick. The hollow point bullets recovered were excessive pressure cartridges so designed that when the bullet hits the target, a "mushroom" effect occurs whereby the bullet actually expands upon contact.

Milorid Denic testified that at 2 a.m. on July 23, 1978, he was playing the pinball machines at the pizza parlor with Michael Lewandowski, So-so Munoz, and the victim. None carried weapons. Four persons walked in, two of whom were carrying baseball bats. They asked if Denic or his friends were members of the Popes, to which they responded in the negative. Reamer then grabbed the victim's arm, pulled him away from

the pinball machine, and took a pack of cigarettes out of his pocket. The victim told Reamer that if he wanted a cigarette, he should have just asked for one, then took the cigarettes out of Reamer's hand. Reamer smiled, called the victim "nothing but a fucken pussy," and then punched him in the face. The victim threw Reamer against the wall. Two of Reamer's companions held bats poised at the heads of Denic, Munoz, and Lewandowski. The victim turned away from Reamer, and Reamer jumped on his back and pulled him to the ground. Reamer's companions began beating the victim with the bats. The victim was on the floor attempting to stand up. Denic ran behind the counter to call the police. So-so picked up a pizza tray and tried to knock a bat out of one of the assailant's hands. Denic heard a shot. The victim at that time "was just trying to get up. Just got up and turned around." He had nothing in his hands. The assailants then ran out the door. He went to the victim who was lying on the floor and shortly thereafter the police arrived. On cross-examination, he said that neither he, the victim, nor any one else ever wielded a pizza roller—only So-so had picked up a pizza pan in an unsuccessful attempt to knock a bat out of one of the assailant's hands. Defendant had not walked in with the group when it first entered the pizza parlor.

The defense presented the following case. Mark Hohmar testified that he was present at the fight involving McFadden and Gebabi at Rockwell and Lawrence. Neither he nor defendant were involved in that fight. Thereafter, he walked into the pizza parlor with several others. Reamer walked up to a young man inside and started fighting. Defendant was not yet there at this point. A couple of people were involved in this fight and one of them had a pizza roller in his hand but he didn't see who. Defendant walked in after the fight was already in progress. On cross-examination, he testified that defendant, Reamer and several other friends had previously been at Kilbourn Park and had driven to the vicinity of Rockwell and Lawrence in search of the Popes. After they parked the car, they were walking towards the pizza parlor when they saw two young men. Reamer asked if they were Popes, then began punching them. Defendant had not yet arrived there in his car.

Officer Joseph Lubomski testified that at about 2:20 a.m. on July 23, 1978, he and his partner responded to a call concerning a shooting at the pizza parlor. He identified several photographs taken after he arrived, including certain of defendant's exhibits, which showed a broom lying on the floor; a wooden handle from a rolling pin; this same broom and roller handle from a different angle; and a second roller handle on the counter.

The jury verdict and sentence imposed thereafter followed, as first above noted, from which this appeal ensues.

## I

■■■ Defendant argues first that the evidence failed to prove him guilty of murder beyond a reasonable doubt because the evidence demonstrated that he reasonably used force in the defense of another; and, alternatively, that he was only guilty of voluntary manslaughter because the evidence showed an actual, albeit unreasonable, belief that the force was justified. The issue of self-defense or defense of another is a question of fact for the jury under proper instructions. (*People v. Jordan* (1960), 18 Ill. 2d 489, 492, 165 N.E.2d 296; *People v. Johnson* (1969), 112 Ill. App. 2d 148, 152, 251 N.E.2d 393.) A conviction will not be reversed unless the evidence presented is so improbable or so palpably contrary to the verdict as to raise a reasonable doubt of guilt. (*People v. McClain* (1951), 410 Ill. 280, 285, 102 N.E.2d 134; *People v. Lewis* (1979), 75 Ill. App. 3d 259, 281, 393 N.E.2d 1098; *People v. Polk* (1979), 70 Ill. App. 3d 903, 388 N.E.2d 864.) A defendant is justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another, or the commission of a forcible felony. Ill. Rev. Stat. 1979, ch. 38, par. 7—1; *People v. Akins* (1976), 39 Ill. App. 3d 908, 912, 351 N.E.2d 366.

■■ The evidence in the instant case supports the jury's rejection of defendant's self-defense or defense of another theories and its finding defendant guilty of murder and armed violence. The State's evidence revealed that defendant walked into the pizza parlor while several of his fellow gang members were striking the victim, some of them using baseball bats, and that defendant shot the unarmed victim while he was down on the floor or trying to stand up. Defendant's principal support of his defense of another theory is his statement to Cisco, that when he shot the victim, the latter was holding a pizza roller in his hand and defendant was justified in believing that the victim was administering a potentially lethal beating to Reamer. We note first, however, that defendant's statement did not claim he actually saw the victim strike or attempt to strike Reamer with the pin, even assuming he had been holding one. Furthermore, Denic testified to the contrary, that the victim had never held any weapon in his hand during the struggle. The jury was not compelled to accept defendant's version of the events. *People v. Benedik* (1974), 56 Ill. 2d 306, 309, 307 N.E.2d 382; *People v. Russell* (1975), 29 Ill. App. 3d 59, 329 N.E.2d 450.

■■ The defense also claims that since Reamer, the aggressor, was not prosecuted by the State, defendant's accountability for Reamer's actions could not rise to the level of murderous intent, particularly in the absence of evidence of common design. The record demonstrates otherwise. The Gaylords, of which defendant was a member, were looking for action

when they started out on that fateful evening. Two of them were armed with baseball bats, which events later showed they used. One of them, defendant, was armed with a handgun loaded with hollow tip bullets, so designed as to wreak the most extensive damage possible when they strike their target. According to the evidence, the admittedly common purpose of the group was to "look for Popes." Their possession of the baseball bats and defendant's possession of the handgun, both prior to leaving Kilbourn Park and again before entering the pizza parlor, coupled with their stated objective of looking for Popes, permitted the jury to have found that defendant had committed himself to a course of action which was dangerous in character and could reasonably be expected to require the use of force that could result in the death of a human being or that there was an expectation that a battle would ensue and the Gaylords, including defendant, were prepared to see it through with the weapons that were taken along for use in the event they were required. (*People v. Tate* (1976), 63 Ill. 2d 105, 109-12, 345 N.E.2d 480; *People v. Hubbard* (1973), 55 Ill. 2d 142, 147-48, 302 N.E.2d 609; *People v. Hughes* (1962), 26 Ill. 2d 114, 120, 185 N.E.2d 834.) The jury could also have believed the testimony of the State's witnesses that at the time of the shooting, the victim was being struck across his back with baseball bats wielded by defendant's confederates, while unarmed and on the floor, which could have been deemed a refutation of defendant's claim that he was then acting in the defense of another. (See *People v. Lewis* (1965), 32 Ill. 2d 391, 396-97, 207 N.E.2d 65, *cert. denied* (1966), 384 U.S. 1021, 16 L. Ed. 2d 1022, 86 S. Ct. 1931; *People v. McCrory* (1962), 25 Ill. 2d 213, 218, 184 N.E.2d 846.) We find no basis in the evidence which would justify the reversal of the jury's findings. Neither *People v. Lopez* (1979), 72 Ill. App. 3d 713, 391 N.E.2d 105, nor *People v. Mitchell* (1973), 12 Ill. App. 3d 960, 299 N.E.2d 472, upon which defendant relies, is of any aid to him. Neither of those exonerated defendants fired the fatal shot, as did defendant in the case *sub judice*.

■■ Defendant's alternative theory, that his murder conviction should be reduced to voluntary manslaughter under the evidence is equally without merit. One who intentionally or knowingly kills an individual commits voluntary manslaughter if at the time of the killing he actually believes the circumstances to be such that, if they existed, would justify or exonerate the killing, but this belief is unreasonable. (Ill. Rev. Stat. 1979, ch. 38, par. 9—2(b); *People v. Lockett* (1980), 82 Ill. 2d 546, 552, 413 N.E.2d 378.) From the preceding analysis of the evidence, the jury could have reasonably concluded that the shot was fired by defendant while the unarmed victim was being beaten with baseball bats as he was lying on the floor or struggling to get to his feet, which would have afforded defendant no basis for the belief, reasonable or unreasonable, that deadly

force was necessary in order to protect the life of another, namely, Reamer. *(People v. Lockett; People v. Gamboa* (1975), 30 Ill. App. 3d 242, 248, 332 N.E.2d 543.) Defendant's reliance upon *People v. Joyner* (1972), 50 Ill. 2d 302, 278 N.E.2d 756, is misplaced, for in that case, unlike the present case, the trial court refused to instruct the jury on the theory of voluntary manslaughter, which, under the evidence, was a viable alternative to murder.

## II

■■■ Defendant next asserts that the trial court improperly allowed, over his objection, the State's proferred Illinois Pattern Jury Instructions, Criminal, No. 5.03 (1968) (hereinafter IPI Criminal) on accountability, which tracks the language of section 5—2(c) of the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, par. 5—2(c)). Because the evidence showed that he acted only as principal, defendant argues that an accountability instruction was inappropriate, citing *People v. Lusietto* (1976), 41 Ill. App. 3d 205, 353 N.E.2d 385. This contention cannot be sustained. The fact that a defendant is guilty of direct participation in a crime does not necessarily render an accountability instruction improper; even slight evidence in support of an accountability theory justifies the giving of this instruction. *(People v. Taglia* (1979), 76 Ill. App. 3d 199, 203, 392 N.E.2d 725; *People v. Fulton* (1979), 68 Ill. App. 3d 915, 925, 386 N.E.2d 605.) Where two or more persons engage in a common criminal design or agreement, any acts in furtherance thereof committed by one party are considered to be the acts of all parties to the common design and all are equally responsible for the consequences of such acts. *(People v. Morgan* (1977), 67 Ill. 2d 1, 8, 364 N.E.2d 56, *cert. denied* (1977), 434 U.S. 927, 54 L. Ed. 2d 287, 98 S. Ct. 411; *People v. Hubbard* (1973), 55 Ill. 2d 142, 147-48, 302 N.E.2d 609; *People v. Hughes* (1962), 26 Ill. 2d 114, 119-20, 185 N.E.2d 834.) The common design can arise either from a preconceived plan or from involvement in the spontaneous acts of the group. *People v. Richardson* (1965), 32 Ill. 2d 472, 476, 207 N.E.2d 478; *People v. Jovicevic* (1978), 63 Ill. App. 3d 106, 114-15, 379 N.E.2d 665.

■■ The evidence in the case before us established that defendant and his fellow gang members left Kilbourn Park to "spray paint," party, and "look for Popes." Defendant carried a handgun and several others brought baseball bats. After several gang members attacked Gebabi and McFadden, they all proceeded to the pizza parlor, some shouting that they wanted to get some Popes. They entered and several started beating the victim, some using baseball bats. Defendant then entered and shot the victim. The fact that defendant was guilty of direct participation in the crime would not render the accountability instruction improper where he aided the others in their assault and the eventual killing of the victim. (See

*People v. Clifford* (1976), 38 Ill. App. 3d 915, 919, 349 N.E.2d 922.) The assertion made by defendant that he agreed to do nothing more than spray paint and party with the Gaylord gang, and could not be held accountable for the kinds of activity in which violence and death would be a foreseeable result, is preposterous in the face of the evidence that his fellow gang-members were armed with baseball bats and he himself was carrying the mortal weapon. Assuming, arguendo, that the accountability instruction could be deemed inappropriate, any resultant error in its having been given is harmless, where, as here, sufficient evidence existed upon which the jury could have found defendant guilty as a principal. ·(*People v. Duckett* (1974), 56 Ill. 2d 432, 308 N.E.2d 590, *cert. denied* (1974), 419 U.S. 965, 42 L. Ed. 2d 180, 95 S. Ct. 226; *People v. Andrews* (1981), 95 Ill. App. 3d 595, 598, 420 N.E.2d 509.) *People v. Lusietto* (1976), 41 Ill. App. 3d 205, 208, 353 N.E.2d 385, cited by defendant, does not hold to the contrary.

### III

■■ The trial court gave the State's instruction patterened after IPI Criminal No. 7.05, concerning manslaughter based on an unreasonable belief that the killing was justified (Ill. Rev. Stat. 1979, ch. 38, par. 9—2(b)) over defendant's objection that it improperly failed to also include the provocation prong of the voluntary manslaughter offense (Ill. Rev. Stat. 1979, ch. 38, par. 9—2(a)), for which omission defendant assigns error. Defendant does not contend on appeal that the provocation instruction should have been given as a result of a provocation of defendant by the victim; rather, defendant claims that because some evidence showed that Reamer was provoked by the victim, defendant was derivatively entitled to this provocation instruction. The jury was entitled to believe from the evidence, however, that Reamer was not provoked under "mutual combat" because he and the other gang members had surrounded the victim and were brutally beating him. (*People v. Handley* (1972), 51 Ill. 2d 229, 235-36, 282 N.E.2d 131, *cert. denied* (1972), 409 U.S. 914, 34 L. Ed. 2d 175, 93 S. Ct. 247.) Mutual combat occurs only when two parties willingly enter an altercation, or upon a sudden quarrel, mutually fought under equal terms. *People v. Hudson* (1979), 71 Ill. App. 3d 504, 510, 390 N.E.2d 5; *People v. Matthews* (1974), 21 Ill. App. 3d 249, 253, 314 N.E.2d 15.

■■ In the principal case, the jury could have concluded that at the time of the shooting the altercation between Reamer and Hoffman had escalated to a brutal gang beating of the victim, as occurred in *People v. Handley*. Defendant's reference to a "one on one" fight is directly contradicted not only by evidence of the gang beating shown by State's evidence, but also in the context of his own statement that bats were

thrown at the victim and his companions by Gaylord gang members. Reamer himself, therefore, would not have been entitled to a provocation instruction. In any event, we reject defendant's derivative argument. The offense of voluntary manslaughter is a legal compromise between murder and exoneration, recognizing the human weakness of intense passion aroused in that person by serious provocation. (*People v. Pequino* (1978), 62 Ill. App. 3d 75, 78, 379 N.E.2d 30.) To allow a defendant to derivatively rely on an intense passion allegedly provoked in a third person would depredate the *raison d'etre* of the provocation prong of voluntary manslaughter. We find no error in the exclusion of a provocation instruction upon this record.

## IV

Defendant next addresses the State's instruction on the allowable use of force by an aggressor. The State submitted IPI Criminal No. 24.09 which is based on sections 7—4(c), 7—14 and 3—2 of the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, par. 7—4(c), 7—14 and 3—2)). This instruction was modified to include accountability by inserting the clause "or one for whose conduct he is responsible," underscored below, which read as follows:

"A person, *or one for whose conduct he is responsible* who initially provokes the use of force against himself, is justified in the use of force only if:

the force used against him is so great that he reasonably believes he is in imminent danger of death or great bodily harm, and he has exhausted every reasonable means to escape the danger other than the use of force which is likely to cause death or great bodily harm to the other person; or

he in good faith withdraws from physical contact with the other person and indicates clearly to the other person that he desires to withdraw and terminate the use of force, but the other person continues or resumes the use of force." (Emphasis added.)

Defendant maintains that this instruction is ambiguous as to which person the pronouns "he" or "himself" refer because the language could be read to mean that Reamer was required to escape before defendant could shoot, or that defendant himself was required to retreat before he could shoot to protect Reamer. Defendant objected to this instruction below based on the impropriety of an accountability theory, but did not argue, as he does on appeal, that the instruction was ambiguous.

■■ Jury instructions should not be misleading or confusing, and should fully and fairly inform the jury of the applicable law. (*People v. Isbell* (1936), 363 Ill. 264, 2 N.E.2d 84; *People v. Foster* (1974), 23 Ill. App. 3d

559, 560, 319 N.E.2d 522.) An instruction which, standing alone, may be ambiguous can be remedied by another instruction, however (*People v. Jones* (1975), 26 Ill. App. 3d 78, 325 N.E.2d 56), or by closing arguments of counsel (*People v. Gerecke* (1977), 45 Ill. App. 3d 510, 517, 359 N.E.2d 1178), which eliminate the ambiguity. In the principal case, any potential ambiguity of the instruction was clarified in closing argument by both the State and defense. Much of defense counsel's closing argument emphasized defendant's interpretation of the facts, namely, that Reamer was under attack by the victim and that defendant shot him upon the belief that the shooting was necessary to save Reamer's life. From this perspective, defense counsel repeatedly concluded that defendant was justified in shooting the victim. The State argued the converse—that Reamer was the aggressor and that defendant could not have believed it necessary to shoot him.

The record demonstrates that the focus of much of the trial was upon whether defendant shot the victim while the victim was under attack or while Reamer was under attack. From the emphasis by both sides upon this issue, as well as the long and detailed closing arguments, the jury could have concluded from the instructions only that if it believed defendant shot the victim to save Reamer's life because Reamer was without the opportunity to retreat, then defendant was justified in the shooting and a verdict of not guilty was required. The asserted ambiguity clearly did not constitute a substantial defect so as to have resulted in an unfair trial where, as here, defendant's objection to this instruction below was not based upon the ground now argued. (*People v. Adkisson* (1980), 83 Ill. 2d 1, 8, 413 N.E.2d 1238; *People v. Roberts* (1979), 75 Ill. 2d 1, 15-16, 387 N.E.2d 331.) We find no basis in this argument upon which to interfere with the jury verdict.

## V

■■ Defendant next claims as error the trial court's comment to the jury during *voir dire* that this was not a capital case, resulting in the likelihood that the jury would be more inclined to convict him. It is improper for a jury to be advised of the possible effect of their verdict where they are not involved in setting the punishment. (*People v. Galloway* (1963), 28 Ill. 2d 355, 362, 192 N.E.2d 370; *People v. Klapperich* (1939), 370 Ill. 588, 593-94, 19 N.E.2d 579.) Such information may form the basis for reversal only if it is a material factor in the conviction of a defendant or is prejudicial to him. (*People v. Cimino* (1970), 45 Ill. 2d 556, 561, 257 N.E.2d 97; *People v. Larson* (1974), 17 Ill. App. 3d 683, 686, 308 N.E.2d 148.) Any error which could have arisen from the trial court's statement here was harmless, however, and could not have been a material factor in defendant's

conviction. The circumstance is analogous to that in which a jury that is empowered to recommend the death sentence or which had been selected on the basis of their willingness to recommend the death penalty is deemed no more likely to convict than a jury without such capabilities. See *Witherspoon v. Illinois* (1968), 391 U.S. 510, 517-18, 20 L. Ed. 2d 776, 782, 88 S. Ct. 1770, 1774; *People v. Madison* (1974), 56 Ill. 2d 476, 487, 309 N.E.2d 11; *People v. Pittman* (1973), 55 Ill. 2d 39, 57, 302 N.E.2d 7.

VI

■■ As his last point, defendant urges that he was improperly convicted of both murder and armed violence because both convictions arose from the identical physical act and only one conviction therefor may be imposed, namely, murder. In two recent opinions, *People v. Lynom* (1981), 97 Ill. App. 3d 1113, and *People v. Best* (1981), 97 Ill. App. 3d 1083, filed June 30, 1981, we considered the question, *inter alia*, of whether those defendants' convictions, voluntary manslaughter in *Lynom*, and rape in *Best*, were lesser-included offenses of armed violence because the offenses arose under the same transactions. We there examined two recent cases decided by the supreme court, filed on June 4, 1981, *People v. Myers* (1981), 85 Ill. 2d 281, and *People v. Haron* (1981), 85 Ill. 2d 261, in each of which the armed violence statute (Ill. Rev. Stat. 1979, ch. 38, pars. 33A—1 through 33A—3) was considered. The supreme court in *Haron* recognized that a predicate felony offense which could be committed without the use of a deadly weapon may give rise to the second change of armed violence when the offense is committed while in the possession of or with the use of a deadly weapon. We therefore said in *Lynom*:

> "If the predicate offense is a felony by statutory definition when committed *without* possession or use of a dangerous weapon, such an offense may support a second charge, armed violence, when committed *with* possession or use of such a weapon. (*Haron*, as applied to Kehm.)" (97 Ill. App. 3d 1113, 1121.)

In *Lynom* we held that voluntary manslaughter when committed with a dangerous weapon became the basis of the additional charge under the provisions of the armed violence statute, and in *Best*, that rape when committed with a dangerous weapon also became the basis for such an additional charge. (Ill. Rev. Stat. 1979, ch. 38, par. 33A—2.) Defendant in the instant case committed the predicate offense of murder, a felony which may be committed with or without the use of a deadly weapon. Defendant's having committed this crime by utilizing a handgun, which is considered a category I deadly weapon under section 33A—1, makes his act amenable to the additional charge of armed violence. His convictions and sentences for both offenses must therefore be affirmed.

For the above and foregoing reasons the jury convictions for murder and armed violence cannot be disturbed, and the judgment and sentences entered thereon must be affirmed.

Affirmed.

STAMOS and PERLIN, JJ., concur.