THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* BILLY SIMMONS, a/k/a James Booker, Defendant-Appellant.

First District (5th Division)    No. 80-758

Opinion filed August 21, 1981.

James J. Doherty, Public Defender, of Chicago (Ira Churgin, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Marcia B. Orr, Richard F. Burke, Jannice F. Kandell, Michael E. Shabat, and Kevin Sweeney, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE MEJDA delivered the opinion of the court:

Following a jury trial defendant was convicted of involuntary manslaughter and armed violence (Ill. Rev. Stat. 1979, ch. 38, pars. 9—3 and 33A—2). He was sentenced to concurrent terms of 5 years and 12 years respectively. On appeal, in his initial brief it is argued that: (1) defendant was denied a fair trial by the State's improper prejudicial statements in closing arguments; (2) the trial court improperly limited defense counsel's cross-examination of defendant's wife; (3) defendant was improperly sentenced for both involuntary manslaughter and armed violence based upon the conviction of the former offense because both convictions arose from the same physical act; and (4) defendant's 12-year sentence for armed violence based on involuntary manslaughter was an abuse of discretion. In a supplemental argument defendant contends that the armed violence conviction based on involuntary manslaughter is not proper because of the insufficiency of the indictment.

It is undisputed that about 10:30 p.m. on July 11, 1979, the deceased, Sharon Hobbs, was at a lounge in the near north side of Chicago. She was intoxicated. The defendant entered the lounge with a loaded revolver in the waistband of his pants. Thereafter, she was fatally shot in the head by that gun. The bullet entered the left rear side of the deceased's head. The examining pathologist indicated that the upward trajectory of the bullet was slightly forward to the right. The bullet lodged in the right portion of her brain near the ear.

The State's evidence consisted of the testimony of two women who were in the tavern at the time of the shooting. Both were seated near the deceased, although neither heard any disturbance nor was looking at deceased prior to the deceased being shot. Both witnesses indicated that the defendant entered the tavern and apparently bumped one of the women. He apologized and then went over to where the deceased was seated on a bar stool only several feet from the witnesses. Several minutes later both witnesses heard two explosions. One of the women then saw that the deceased remained seated at the bar for a moment before falling to the floor. Defendant at this time was holding a gun pointed up toward the ceiling. After the shooting the defendant fled. The other witness indicated that she saw the defendant with a gun in his hand standing by the entrance to the men's washroom. The gun was held and pointed toward the ceiling.

Defendant's wife testified for the State that at approximately 11 p.m., she was in an apartment visiting some friends when the defendant arrived and said that he had just killed someone. The defendant gave her the gun before leaving the apartment. She took the gun and put it on their dresser upon arriving at their apartment. Several minutes later defendant called, and at his direction she took clothes to Katherine Anderson's apartment, where defendant changed from the clothing he had been wearing at the time of the shooting. The following day this witness spoke to her father, and she took the gun to his place of work, where the weapon was given to the police. Defendant's wife indicated that on the day of the shooting he had been drinking but was not intoxicated. When she saw him at approximately 11 p.m., defendant appeared to be crying and upset. She indicated that she did not remember defendant telling her at the time he gave her the gun that it had accidentally discharged.

Katherine Anderson's husband was in the apartment sleeping when defendant arrived there after the shooting. As Anderson's wife answered the door, he heard defendant exclaim to her that he had just killed "the bitch." Defendant then asked this witness to go to the tavern to determine what was occurring. When Anderson found out that the victim had been killed, he notified the police, who went back to his apartment and arrested the defendant.

The record also shows that when arrested defendant was wearing the clothing brought to him by his wife. Bloodstained clothing that he had been wearing was found in the Anderson apartment. Several sections of the clothing had been cut out because the garments apparently contained bloodstains. It was noted that at the time of his arrest defendant had a strong smell of alcohol about him. There was a stipulation that the .38-caliber revolver, which defendant gave to his wife, had one expended shell case in it when it was recovered by the police; no other bullets or expended shells were in the weapon. At trial the jury observed the demonstration of how the weapon was fired. The trigger could be pulled back, which would force the hammer into a cocked position and then result in the hammer moving forward, or the hammer itself could be pulled back by the shooter and then activated by simply pulling the trigger. A ballistics expert indicated that the bullet taken from the deceased was a hand-cast cartridge which was not sold by a general ammunition manufacturer. The hand cast bullet was flat-nosed and would do more damage upon impact.

Defendant testified on his own behalf concerning the events which transpired on the day of the shooting. Defendant claimed that for about 10 hours prior to the shooting he had been drinking a variety of alcoholic beverages at different places. Finally, defendant and his brother-in-law returned to defendant's apartment, where they continued to drink. They then went to the tavern in question after defendant had taken a gun and

placed it in his waistband. While the defendant ordered drinks at the tavern, his brother-in-law went to play the juke box. According to the defendant, deceased was seated nearby, and she appeared to be fairly intoxicated because she had trouble sitting on the bar stool. While the defendant was putting his change away from purchasing the drinks, the gun was apparently visible in his waistband, and the deceased asked to look at it. Defendant dropped the gun, and both he and deceased then tried to pick it up. Defendant, however, retrieved the gun first and snatched it back toward him in order to keep the deceased from getting it. At this point the gun, which was pointed at the deceased, discharged. Defendant claimed that he then ran from the tavern after his brother-in-law told him to leave and then went to see his wife to tell her that he had shot the deceased.

In rebuttal, Katherine Anderson testified that she was awakened by the defendant who told her that he has just killed "a bitch." Defendant also told her that he had been drinking when deceased asked for part of the drink. He refused and she slapped him. This caused him to hit her on the head with the gun. She later overheard a telephone conversation between defendant and his wife wherein the defendant asked his wife if she had left any bullets in the gun, and defendant's wife responded that she had not.

I

Defendant initially contends that two prosecution comments made during closing argument constituted reversible error. Defendant points to the statements that if defendant were acquitted "he will be back but the cost will be in blood," and the State's reference to members of deceased's family who were seated in the court room during the trial. A defense objection to the former was denied; an objection to the latter sustained, although a request for a mistrial was denied. Defense counsel also expressly argued the propriety of the latter comment at a hearing on defendant's post-trial motion.

We believe that the comments of our supreme court in *People v. Smothers* (1973), 55 Ill. 2d 172, 176, 302 N.E.2d 324, are appropriate in this instance.

> "The character and scope of argument to the jury is left very largely to the trial court, and every reasonable presumption must be indulged in that the trial judge has performed his duty and properly exercised the discretion vested in him. [Citation.] The general atmosphere of the trial is observed by the trial court, and cannot be reproduced in the record on appeal. The trial court is, therefore, in a better position than a reviewing court to determine the prejudicial effect, if any, of a remark made during argument,

and unless clearly an abuse of discretion, its ruling should be upheld."

In this case we do not believe that either comment proves a basis for reversal of defendant's conviction.

■■ While we do not condone the comment that defendant's acquittal would be at the cost of blood, we cannot conclude that this reference contributed to his conviction. There is substantial evidence that defendant fired two shots in the bar and one fatally wounded the victim in the back of the head. Defendant then sought to remove the bloodstains from his clothes and leave only one expended cartridge casing in the weapon in an obvious attempt to support his assertion that the shooting was accidental.[1] The entry wound to deceased clearly negated defendant's assertion that the gun accidentally discharged as deceased tried to grab it. For the same reason, we believe the State's reference to deceased's family had no bearing on the jury's deliberation. *People v. Wilson* (1972), 51 Ill. 2d 302, 307, 281 N.E.2d 626.

## II

■■ Defendant's second contention pertains to the defense cross-examination of defendant's wife when the trial court refused to allow her to testify first to whether defendant had told her that the gun accidentally discharged, and secondly to whether the State had threatened to incarcerate her if she did not testify. However, defendant's wife then testified that she did not remember defendant telling her shortly after the shooting that he did not intend for the gun to discharge. In essence, the question upon which the first limitation is predicated was answered. The first limitation placed on the cross-examination of defendant's wife cannot be said to be improper.

■■ The second limitation concerning whether she had been threatened with incarceration if she did not testify presents a differing situation. It is proper to cross-examine a witness upon a pending charge to show bias. (*People v. Barr* (1972), 51 Ill. 2d 50, 51, 280 N.E.2d 708.) However, the scope of such cross-examination does not necessarily extend to a mere investigation. (*People v. Olmos* (1978), 67 Ill. App. 3d 281, 292, 384 N.E.2d 853.) Here, defendant's wife was apparently not charged in relation to defendant's offense. Further, her testimony was not of crucial significance and was to a large extent corroborated by defendant. Under such circumstances we find no abuse of discretion in the trial court's limitation.

---

[1] While it appears that the jury conducted substantial deliberations, there is no basis to defendant's implication that the jury would acquit him. Rather the jury could have been divided on whether to convict defendant of murder.

### III

Defendant's contention that he cannot be convicted of both armed violence, which is the greater offense, and involuntary manslaughter is premised on the conclusion that both offenses arose from the same act. In *People v. Jones* (1981), 93 Ill. App. 3d 475, 482, 417 N.E.2d 647, the First Division of this court stated:

> "Several recent Illinois decisions have considered whether a conviction may be imposed for both armed violence and for the offense underlying the armed violence. (*People v. Adams* (1980), 91 Ill. App. 3d 1059, 415 N.E.2d 610; *People v. Lavoy* (1980), 91 Ill. App. 3d 639, 415 N.E.2d 487; *People v. Crawford* (1980), 90 Ill. App. 3d 888, 414 N.E.2d 25; *People v. Jones* (1980), 89 Ill. App. 3d 1030, 412 N.E.2d 709.) Each has held that, as armed violence is defined as the commission of a felony while armed with a dangerous weapon, the single act of committing the felony by the use of a dangerous weapon gives rise to both offenses. As such, in each case under the authority of *King*, the conviction and/or sentence of the lesser offense has been vacated. We follow this authority in the present case."[2]

This view is in accord with our decision in *People v. Jones* (1980), 89 Ill. App. 3d 1030, 412 N.E.2d 683.

However, the Second Division of this court, which had followed our decision in *Jones*, has recently reconsidered the issue. In a series of cases that division has held that multiple convictions are proper for armed violence and the underlying felony when the latter may be committed without possession of a dangerous weapon. (*People v. Feierabend* (1981), 98 Ill. App. 3d 731, 424 N.E.2d 765.) In one of those cases (*People v. Lynom* (1981), 97 Ill. App. 3d 1113, 423 N.E.2d 1281) the Second Division affirmed convictions for voluntary manslaughter and armed violence, and in *Feierabend* murder and armed violence convictions were affirmed.

■■ After consideration of the matter and until further guidance by our supreme court, we adhere to our decision in *Jones*. We therefore vacate defendant's conviction for involuntary manslaughter.

### IV

■■ Defendant also maintains that his 12-year sentence for armed violence is excessive and should be reduced to 6 years. We have examined the record of this totally senseless occurrence in conjunction with defendant's lack of a criminal background and family situation. We may have imposed a different sentence had we been the trial judge. But we cannot

---

[2] Petitions for leave to appeal were pending in *Crawford* and our decision in *Jones* (Nos. 54344 and 54382). Leave to appeal was denied on July 30, 1981, in both cases.

say that the sentence was an abuse of discretion. *People v. Cox* (1980), 82 Ill. 2d 268, 280, 412 N.E.2d 541.

## V

We allowed defendant to file a supplemental issue challenging the sufficiency of the indictment regarding his conviction for armed violence based on involuntary manslaughter. Defendant had been indicted for murder and armed violence based on murder. Citing *People v. Miles* (1981), 96 Ill. App. 3d 721, 422 N.E.2d 5, defendant argues that his indictment did not charge him with the offense for which he was convicted.

In *Miles* the defendant was specifically charged with armed violence based on voluntary manslaughter. The information for that offense did not specify the elements of the offense for the subsection of the manslaughter statute but merely referred to the subsection. The appellate court held that this phraseology was insufficient, reasoning that it was unclear under which subsection of the voluntary manslaughter statute defendant was charged thereby rendering the information defective and resulting in an improper conviction. In so holding the appellate court remarked that it would not extend the rule of law that one charged only with murder may be convicted of a lesser included manslaughter offense which had not been charged. *People v. Speed* (1972), 52 Ill. 2d 141, 144-45, 284 N.E.2d 636.

The case at bar differs to the extent that we are not presented with a situation where an information specifically charging armed violence based on involuntary manslaughter has been filed and found to be defective in its content. And we do not believe that it is inappropriate to conclude that the charge of armed violence based on murder may include the offense of involuntary manslaughter as the underlying felony since, as noted in *Speed*, defendant has been adequately apprised that murder may also encompass all degrees of homicide. We therefore reject the supplemental argument raised by defendant.

Accordingly, the judgment of the circuit court for armed violence is affirmed; its judgment for involuntary manslaughter is vacated.

Affirmed in part and vacated in part.

SULLIVAN, P. J., and LORENZ, J., concur.