THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ERWIN DANIEL, Defendant-Appellant.

First District (6th Division)   No. 1—86—2617

Opinion filed November 17, 1989.

Roosevelt Thomas, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Inge Fryklund, Carol L.

Gaines, and Janet C. Mahoney, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LaPORTA delivered the opinion of the court:

The defendant was arrested and was tried for the murder of Roger Tate and the attempted murder and aggravated battery of Darren Cooper. A mistrial was declared in defendant's prior trial. On retrial, the jury found defendant guilty of the murder of Roger Tate, the attempted murder of Darren Cooper and aggravated battery of Darren Cooper. The trial judge imposed a sentence of natural life. After his motion for a new trial was denied, defendant appealed.

The defendant raises the following issues on appeal: (1) whether defendant was proven guilty of murder, attempted murder and aggravated battery beyond a reasonable doubt where he offered evidence to show he acted in self-defense; or (2) in the alternative, if the jury found he did not act in self-defense, whether defendant should have been found guilty of voluntary manslaughter, because at the time of the shootings, he believed the occupants of the car were armed and that his life was in danger and therefore he believed his actions were justified; (3) whether the trial judge failed to properly instruct the jury that when defendant raised as his defense his fear of great harm from the victims and his resultant belief that his actions were justified, the burden of proof shifted to the State to prove that his belief in justification was meritless; (4) whether the court erred in refusing to permit investigating police officers to testify to defendant's statements made while in custody that the passenger in the back seat reached under the seat and pointed something black out the window at defendant; (5) whether the sentence of natural life imposed by the trial court without consideration of factors in mitigation violates the fourth, eighth and fourteenth amendments of the Federal Constitution; and (6) whether defendant was sentenced under the mandatory natural life statute.

Defendant and Calloway were arrested on charges of murder, attempted murder and aggravated battery. Defendant and Calloway made and signed sworn statements to an assistant State's Attorney while in police custody. Calloway was tried in a bench trial and acquitted. Defendant first was tried by a jury which was unable to reach a verdict. The court declared a mistrial.

These convictions result from the jury's finding the defendant guilty of the murder of Roger Tate and the attempted murder and aggravated battery of Darren Cooper in the defendant's second trial.

The relevant facts are as follows. On the evening of June 13,

1985, just prior to the shooting, Phillip Potter was driving his car west on 90th Street in the vicinity of Bishop and Laflin Streets in Chicago, Illinois. Darren Cooper rode in the rear seat, and Roger Tate was in the front passenger seat with his head leaning out of the window looking back at people on the street corner.

At the same time, defendant Erwin Daniel, Ricky Calloway and Andre Mosley were standing on the sidewalk on 90th Street at the alley between Bishop and Laflin Streets as Potter's car drove up. Defendant asked Tate "What *** are you looking at?" Although testimony conflicts as to what precisely was said in response, the testimony is uncontroverted that defendant pulled a gun from his pocket and shot Cooper and Tate. Potter drove immediately to Little Company of Mary Hospital, where Cooper was treated for a gunshot wound to his elbow and Tate was pronounced dead from a gunshot wound to the back. Both defendant and Calloway were arrested the next day. While in custody they were given *Miranda* warnings and both gave signed statements to the assistant State's Attorney.

We first address the issue raised by defendant that the testimony of police officers Danzl and Baker regarding the defendant's statements to them after his arrest was improperly excluded and should have been permitted at trial. The trial court rejected defendant's offer of proof as to his statement to these police officers that the man in the back seat of the car reached under the front seat and then pointed something black out the window. The court noted on the record that the officers had been permitted to testify in the first trial to establish no recent fabrication in defendant's testimony at trial because the defendant had testified. The defendant did not testify at the second trial.

■■ Police reports and similar material are generally held to be inadmissible hearsay when offered to prove the truth of matters asserted. (*Williamson v. City of Springfield* (1984), 125 Ill. App. 3d 361, 366, 465 N.E.2d 1035, 1039; *Kyowski v. Burns* (1979), 70 Ill. App. 3d 1009, 1014, 388 N.E.2d 770, 774; *Walls v. Jul* (1969), 118 Ill. App. 2d 242, 249, 254 N.E.2d 173, 176; *Redding v. Schroeder* (1964), 54 Ill. App. 2d 306, 314, 203 N.E.2d 616, 620.) Police officers may be allowed to testify about otherwise hearsay material upon which they have based further actions and investigation. (*People v. Hunter* (1984), 124 Ill. App. 3d 516, 529, 464 N.E.2d 659, 671; *People v. Bryant* (1984), 123 Ill. App. 3d 266, 275, 462 N.E.2d 780, 786.) Here the testimony of Officers Danzl and Baker was offered by defendant as a substitute for defendant's failure to testify at trial. There was no evidence that the officers based any investigation upon the defendant's statement.

■ The defendant argues that even if the testimony is hearsay, it should be admitted as either a state-of-mind exception or to prove that the statement was made. While a third party may testify that a certain conversation took place, the third party may not testify as to the contents of that conversation. *People v. Jackson* (1979), 72 Ill. App. 3d 231, 237, 390 N.E.2d 47, 52; *People v. Finley* (1978), 63 Ill. App. 3d 95, 100, 379 N.E.2d 645, 648.

Under certain circumstances, hearsay evidence may be admitted to inform the jury of the defendant's state of mind at the time the acts with which he is charged occurred, but it may not be used as evidence of the contents of any statements made. In *People v. Britz* (1986), 112 Ill. 2d 314, 493 N.E.2d 575, cited by the defendant, tape recordings of conversations the defendant had with a witness were offered to show the voluntariness of his confession, but not for the contents of that confession. (*Britz,* 112 Ill. 2d at 320, 493 N.E.2d at 577.) Here the defendant attempts to offer the hearsay testimony to show his state of mind at the time of the shooting.

In *People v. Kline* (1980), 90 Ill. App. 3d 1006, 414 N.E.2d 141, the court noted that "defendant's state of mind at the time of the occurrence is a material issue and is a proper subject of examination." (*Kline,* 90 Ill. App. 3d at 1014, 414 N.E.2d at 146, citing *People v. Harris* (1956), 8 Ill. 2d 431, 436, 134 N.E.2d 315, 318, and *People v. Pernell* (1979), 72 Ill. App. 3d 664, 668, 391 N.E.2d 85, 88.) The court in *Kline* held that the defendant should have been able to testify as to his state of mind at the time he acted. There the defendant was a police informant, was aware that he was placing himself in a dangerous situation (*Kline,* 90 Ill. App. 3d at 1009-10, 414 N.E.2d at 143), and shot only after the assailants continued to attack despite warnings, when a shotgun was pointed at the defendant. (*Kline,* 90 Ill. App. 3d at 1011, 414 N.E.2d at 144.) Because the defendant here did not testify, the *Kline* case does not apply.

■ We find no error in the trial court's refusal to permit the investigating police officers to testify at the second trial since the only basis for offering their testimony was to disprove recent fabrication by defendant at trial. In the absence of any trial testimony from defendant, their testimony was inadmissible.

The defendant next argues that he should not have been found guilty because he acted in self-defense.

"A person is justified in the use of force against another when and to the extent that he reasonably believes that such conduct is necessary to defend himself or another against such other's imminent use of unlawful force. However, he is justified

in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another \*\*\*." Ill. Rev. Stat. 1985, ch. 38, par. 7—1.

■ Inasmuch as self-defense is an affirmative defense, defendant is required to offer sufficient proof to show that force is threatened against the defendant, that the defendant when threatened was not the aggressor; that the danger of harm to defendant is imminent; that the force threatened is unlawful; that the defendant when threatened must actually believe that a danger exists; that his use of force is necessary to avert the danger; that the kind and amount of force which he uses is necessary and that these beliefs are reasonable. Where the defendant uses deadly force he must believe that the threatened force will cause him death or great bodily harm, or that the force threatened is a forcible felony. *People v. Carter* (1985), 135 Ill. App. 3d 403, 409, 481 N.E.2d 1012, 1017, citing *People v. Williams* (1965), 56 Ill. App. 2d 159, 165-66, 205 N.E.2d 749, 752.

At trial, the State's witnesses Cooper and Potter testified that no one in the car spoke any gang slogans, but that when defendant shot into the car he shouted "Insane Vice Lords." Both Cooper and Potter denied that any of the men in the car had a gun. Calloway testified at trial that, earlier on the day of the shooting, defendant met Calloway and Andre Mosley and at defendant's request Calloway gave defendant a .25 automatic pistol. After the shooting, the police, based on Calloway's instructions, recovered the gun from Calloway's home, where he testified he had hidden it at defendant's request. He also testified that at the time of the occurrence he saw no gun or other weapon in the victim's car, that the defendant told him the person in the back seat of the car looked "like he was pulling up a gun," so defendant shot into the car.

Calloway's sworn statement to the assistant State's Attorney was read into the record. In his statement Calloway stated that defendant "and one of the guys in the car said something about GD, meaning Gangster Disciples and Erwin reached for his gun, pulled it out and fired two shots." Calloway also stated that "I never saw [a] gun or other weapon in the car where the guys were shot.

■ At trial, the defense offered evidence to show that defendant was defending himself from what he believed was a gun. While defendant did not testify at trial, his signed statement made to the assistant State's Attorney at the time of his arrest was read into the record without objection. In his signed statement defendant stated that somebody in the car had said "GD," which meant Gangster Disci-

ples, a rival gang to the Vice Lords, before the defendant fired the gun into the car. The defendant claimed that Cooper said he was a member of a rival gang, and may have pointed something at defendant, at which point defendant shot into the car while calling out the name of his street gang. The statement in defendant's own words was "I thought because [Cooper] was a Gangster Disciple, he would have a gun. I never saw a gun, though."

Here the testimony of those present at the time of the shooting established that the defendant was not in a clearly dangerous situation and had not been attacked.

When there is a disputed question as to self-defense, it is a question for the jury to decide. (*People v. Feierabend* (1981), 98 Ill. App. 3d 731, 736, 424 N.E.2d 765, 770, citing *People v. Jordan* (1960), 18 Ill. 2d 489, 493, 165 N.E.2d 296, 298, and *People v. Johnson* (1969), 112 Ill. App. 2d 148, 152, 251 N.E.2d 393, 395.) "A conviction will not be reversed unless the evidence presented is so improbable or so palpably contrary to the verdict as to raise a reasonable doubt of guilt." *Feierabend*, 98 Ill. App. 3d at 736, citing *People v. McClain* (1951), 410 Ill. 280, 285, 102 N.E.2d 134, 137; *People v. Lewis* (1979), 75 Ill. App. 3d 259, 281, 393 N.E.2d 1098, 1114; *People v. Polk* (1979), 70 Ill. App. 3d 903, 906, 388 N.E.2d 864, 867.

Here the jury clearly did not believe the self-defense argument when balanced against the evidence produced by the State. No one testified that Cooper exhibited a gun. No one testified that Cooper did in fact point "something black" out the car window. No evidence was produced at trial to support defendant's alleged belief that he was in danger nor that his firing of the gun was a reaction to any threat, actual or subjectively perceived. The evidence supports the jury's rejection of self-defense.

■ The defendant argues in the alternative that even if it were not shown that he acted in self-defense, he should have been found guilty only of voluntary manslaughter. "The difference between self-defense and voluntary manslaughter is in the reasonableness of the defendant's subjective belief. If reasonable, then a jury is justified in finding the defendant acted in self-defense. If unreasonable, the jury is justified in returning a verdict of voluntary manslaughter." (*People v. Scott* (1981), 97 Ill. App. 3d 899, 903, 424 N.E.2d 70, 73, citing Ill. Rev. Stat. 1979, ch. 38, par. 9—2, and *People v. O'Neal* (1984), 104 Ill. 2d 399, 405, 472 N.E.2d 441, 443.) The defendant here argues that if he cannot be found to have acted in self-defense, he should have been found guilty only of voluntary manslaughter, not of murder.

"A person who intentionally or knowingly kills an individual

commits voluntary manslaughter if at the time of the killing he believes the circumstances to be such that, if they existed, would justify or exonerate the killing under the principles stated in Article 7 of this Code, but his belief is unreasonable." Ill. Rev. Stat. 1985, ch. 38, par. 9—2(b).

■ The issue of whether it would be unreasonable for the defendant here to have assumed he was in mortal danger just before he shot Cooper in the arm and Tate in the back is a question of fact for the jury to decide. (*People v. Jordan* (1985), 130 Ill. App. 3d 810, 812, 474 N.E.2d 1283, 1286; *People v. Chatman* (1981), 102 Ill. App. 3d 692, 700, 430 N.E.2d 256, 262.) Unless the record raises serious questions regarding the appropriateness of the jury's decision, it should not be disturbed by a reviewing court. (*People v. Steffens* (1985), 131 Ill. App. 3d 141, 147, 475 N.E.2d 606, 612, citing *People v. Yates* (1983), 98 Ill. 2d 502, 518-19, 456 N.E.2d 1369, 1378, *cert. denied* (1984), 466 U.S. 981, 80 L. Ed. 2d 836, 104 S. Ct. 2364; *People v. Jordan* (1985), 130 Ill. App. 3d 810, 813, 474 N.E.2d 1283, 1286; *Feierabend*, 98 Ill. App. 3d at 736, 424 N.E.2d at 770.) There is no proof that the defendant was in actual danger, but merely that he thought that one of the car's passengers might have had a gun. The defendant stated that he feared Gangster Disciples because a Gangster Disciple had shot at him once, but he acknowledged that it was not Potter or Tate or Cooper who had done so.

The jury was required to judge the credibility of the evidence offered to establish defendant's subjective belief that he was justified in firing a gun at the men in the car. In finding defendant guilty of murder, attempted murder and aggravated battery, the jury clearly did not believe that the evidence supported a finding that defendant believed he was justified in firing his gun at the victims in the car. Therefore, the jury rejected defense arguments for a finding of voluntary manslaughter instead of murder.

Defendant next argues that the trial court failed to properly instruct the jury on the State's burden to affirmatively prove the defendant's belief in justification to have been meritless where defendant has raised as his defense his belief that he was in danger of great harm and that his actions were justified because of that belief.

In his supplemental brief, the defendant argues that the jury instructions given by the court for the burdens of proof on the issues of murder, self-defense and the lesser offense of voluntary manslaughter based upon defendant's unreasonable belief in justification were erroneous, because they failed to instruct the jury that the burden of disproving defendant's belief that his actions were justified rests with

the State. (*People v. Reddick* (1988), 123 Ill. 2d 184, 526 N.E.2d 141.) The defendant contends that the reasoning of the supreme court in *Reddick* is applicable here. The court stated "the burden of proof and elements of the offense[ ] are essential to a fair trial and that the failure to give such instructions constitutes grave error when, viewing the record as a whole, it appears that the jury was not appraised of the People's burden of proof." *Reddick*, 123 Ill. 2d at 198, 526 N.E.2d at 147, citing *People v. Berry* (1984), 99 Ill. 2d 499, 460 N.E.2d 742; *People v. Jenkins* (1977), 69 Ill. 2d 61, 370 N.E.2d 532.

Defendant argues that because the erroneous instructions are substantial defects and, even though defendant did not raise the issue before the trial court, the interests of justice require this court on appeal to consider the question under the grave error exception to Supreme Court Rule 451(c) (107 Ill. 2d R. 451(c); *Reddick*, 123 Ill. 2d at 198, 526 N.E.2d at 147). Defendant argues that because the jury was not properly instructed his conviction should be reversed and he is entitled to a new trial.

The pertinent burden of proof Illinois Pattern Jury Instructions (hereinafter IPI) given here were:

"I.P.I. Criminal Number 7.02 (Murder)

To sustain the charge of murder, the State must prove the following propositions:

*First*: That the defendant performed the acts which caused the death of Roger Tate; and

*Second*: That when the defendant did so, he intended to kill or do great bodily harm to Roger Tate; or he knew that his act would cause death or great bodily harm to Roger Tate; or he knew that his acts created a strong probability of death or great bodily harm to Roger Tate; and

*Third*: That the defendant was not justified in the force he used.

If you find from your consideration of all the evidence that each one of these propositions has been proved beyond a reasonable doubt, you should find the defendant guilty.

If you find from your consideration of all the evidence that any of these propositions has not been proved beyond a reasonable doubt, you should find the defendant not guilty.

I.P.I. Criminal Number 24—2506 (Self-Defense)

A person is justified in the use of force when and to the extent that he reasonably believes that such conduct is necessary to defend himself against the imminent use of unlawful force.

However, a person is justified in the use of force which is in-

tended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself.

I.P.I. Criminal Number 7.06 (Voluntary Manslaughter—Justification)

To sustain the charge of voluntary manslaughter, the State must prove the following propositions:

*First*: That the defendant performed the acts which caused the death of Roger Tate; and

*Second*: That when the defendant did so, he intended to kill or do great bodily harm to Roger Tate; or he knew that his acts would cause death or great bodily harm to Roger Tate; or

He knew that his acts created a strong probability of death or great bodily harm to Roger Tate; and

*Third*: That when the defendant did so he believed that the circumstances existed which would have justified killing Roger Tate; and

*Fourth*: That the defendant's belief that such circumstances existed was unreasonable.

If you find from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt, you should find the defendant guilty.

If you find from your consideration of all the evidence that any of these propositions has not been proved beyond a reasonable doubt, you should find the defendant not guilty." See Illinois Pattern Jury Instructions, Criminal, Nos. 7.02, 24—2506, 7.06 (2d ed. 1981).

The *Reddick* court centered its analysis of the errors in these jury instructions (where defendant has raised as his defense evidence to show that when he acted he believed his act was justified) on two considerations: (1) whether the State in order to maintain a murder conviction must disprove the existence of defendant's mental state, *i.e.*, prove defendant's belief in justification was unreasonable and therefore meritless, or (2) whether the defendant, in order to avoid the murder conviction and instead be convicted of voluntary manslaughter, must prove his belief that his actions were justified. *Reddick*, 123 Ill. 2d at 195, 526 N.E.2d at 145.

The court stated that where "a defendant charged with murder asserts that (if he acted unjustifiably) he acted under either an unreasonable belief of justification or intense provocation, the People need not present evidence of either of those mental conditions in order to con-

vict him of voluntary manslaughter. The reason for this result is that these two mental states are states of lesser culpability, and defendant relies on their existence in order to lessen the culpability of his otherwise murderous conduct." (*Reddick*, 123 Ill. 2d at 195, 526 N.E.2d at 145.) Therefore, a defendant must produce sufficient evidence to reduce the charge from murder to voluntary manslaughter, and when he has done so, the State then must prove beyond a reasonable doubt all of the statutory elements of murder and also must prove the defenses are meritless and insufficient to reduce the charge to voluntary manslaughter. *Reddick*, 123 Ill. 2d at 197, 526 N.E.2d at 146.

■ Where defendant has failed to produce sufficient evidence to prove he believed he was in danger, he has fallen short of establishing the mitigating mental condition of voluntary manslaughter required to shift the burden of disproving his belief to the State. (*People v. Carter* (1988), 177 Ill. App. 3d 593, 598, 532 N.E.2d 531, 535.) Here no evidence was adduced which would have given defendant reason to believe he was justified in his use of deadly force against Tate, and therefore, if any error existed in the given instructions, it was harmless beyond a reasonable doubt. *People v. Skipper* (1989), 177 Ill. App. 3d 684, 689, 533 N.E.2d 44, 47.

Applying the *Reddick* analysis to this case, we find the defendant has failed to produce sufficient evidence to reduce the charge to voluntary manslaughter. Therefore, while the instructions given stated an erroneous burden of proof for voluntary manslaughter, we conclude that this was harmless error because the State has overwhelmingly proved defendant guilty of murder.

Defendant was convicted of the murder of Tate. The uncontroverted evidence established that Tate was the passenger in the front seat of the car, that he had his head out of the window immediately prior to the confrontation with defendant, that defendant was some distance away from the car when words were exchanged between defendant and Cooper, who was in the back seat of the car, that Tate moved his head back into the car and Cooper leaned forward to the open window, that Cooper and defendant exchanged words, that defendant came up close to the car, drew his gun and shot into the car, killing Tate and wounding Cooper. The evidence is clear that Tate made no threatening moves or statements to defendant, and therefore, in shooting Tate defendant could not have believed Tate was a threat to him so that the act of shooting Tate would be justified.

Following the shooting, defendant ran from the scene, gave the gun to Calloway to hide and went for something to eat.

Defendant's version of the occurrence at trial was elicited from the

testimony of Calloway, who testified that defendant told him he thought Cooper in the back seat "looked like he was pulling up a gun," but Calloway's statement to the assistant State's Attorney while in custody was that one of the people in the car used a gang slogan and defendant reached for his gun and fired two shots into the car. Calloway stated at trial and in his prior sworn statement that he never saw a weapon in the car. Because he did not testify, defendant's only statement at trial was his sworn statement to the assistant State's Attorney while in custody, where he stated that one passenger used a gang slogan and may have pointed something at defendant at which point he shot into the car. He stated that he thought Cooper had a gun because Cooper "was a Gangster Disciple, [and] would have a gun" but that he "never saw a gun, though."

The defendant's claim that his actions were justified centered around his confrontation with Cooper, whom he recognized. An examination of the record shows his statement and Calloway's statement and trial testimony referred to the passenger in the back seat and defendant's alleged perception of danger from him. No proofs were offered that defendant feared danger from Tate and yet Tate was shot and killed.

Hence, on the issue of erroneous jury instructions, we find the record does not support a reversal of defendant's conviction of murder nor is defendant entitled to a new trial.

■■ We next consider defendant's argument that the trial judge's imposition of the sentence of natural life without parole was unconstitutional where the court did not consider factors in mitigation and where there is no provision for reevaluating defendant's rehabilitation. Defendant draws an analogy between a death sentence and a sentence of natural life without parole and concludes that in each instance the trial court first must consider relevant mitigating factors before imposing sentence. Here, the trial judge specifically noted at sentencing that he was precluded from imposing a death sentence. Defendant's argument equating the sentence of natural life without parole with a death sentence contradicts United States Supreme Court cases which find clear distinctions between them. *Solem v. Helm* (1983), 463 U.S. 277, 289, 77 L. Ed. 2d 637, 648-49, 103 S. Ct. 3001, 3009; *Rummel · v. Estelle* (1980), 445 U.S. 263, 272, 63 L. Ed. 2d 382, 390, 100 S. Ct. 1133, 1138.

The Criminal Code of 1961 (Ill. Rev. Stat. 1985, ch. 38, par. 9—1(c)) requires the court, prior to sentencing, to consider any aggravating and mitigating factors which are relevant to a determination of the degree of moral culpability of the defendant. In assessing defendant's

moral culpability, the evidence showed that, prior to the occurrence, he asked Calloway to give him a gun, that when the shooting occurred, he pulled out the gun and fired two shots into the car even though he saw no gun and only verbal exchanges took place between defendant and one of the victims. The victims made no attempt to leave the car or pursue the defendant. Following the shooting, defendant and his companions fled the scene, defendant asked Calloway to hide the gun, and in his signed statement he told the assistant State's Attorney that he then left and went to get something to eat.

Where the defendant showed a lack of remorse and an "eagerness to party" following the victim's murder, the court found these factors together with the wanton brutality of the crime to justify the imposition of the sentence of natural life. (*People v. Wilson* (1985), 133 Ill. App. 3d 265, 272, 478 N.E.2d 561, 566.) In *People v. Nester* (1984), 123 Ill. App. 3d 501, 502, 462 N.E.2d 1011, 1012-13, the defendant began a fight with a much smaller, unarmed victim and stabbed him. Finding defendant's actions "cold-blooded *** reprehensible, cruel and heinous," the trial court imposed the sentence of natural life which was affirmed on review. (*Nester*, 123 Ill. App. 3d at 505, 462 N.E.2d at 1015.) Where the "murder was casually undertaken *** and was performed cold-bloodedly without any provocation, real or imagined, on the part of the victim," the sentence of natural life was upheld on review. *People v. Walker* (1985), 136 Ill. App. 3d 177, 182, 483 N.E.2d 301, *appeal denied* (1985), 111 Ill. 2d 563, 485 N.E.2d 2093.

There is no evidence in our case that the murder victim Tate did anything to provoke the defendant to shoot him in the back. In fact, the defendant's own statement to the assistant State's Attorney was that he thought the person in the back seat was reaching for a gun under the seat. The person in the back seat was Cooper and not Tate. Defendant's lack of remorse following the murder renders his claim that the shooting occurred because he was in fear for his life from the victim unbelievable. Given the facts of this case and the evidence produced against the defendant, we hold the sentence of natural life was proper.

As his final allegation of error, the defendant argues that he should have been sentenced under the statutory section which permits a discretionary natural life sentence (Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—1(a)(1)(b)) instead of under the statutory section which requires mandatory life imprisonment (Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—1(a)(1)(c)). Defendant was charged with the murder of Tate under section 9—1(a)(2) (Ill. Rev. Stat. 1985, ch. 38, par. 9—1), which states:

"§(a) A person who kills an individual without lawful justification commits murder if, in performing the acts which cause the death:

\*\*\*

(2) He knows that such acts create a strong probability of death or great bodily harm to that individual or another;

\*\*\*

(b) A defendant who at the time of the commission of the offense has attained the age of 18 or more and who has been found guilty of murder may be sentenced to death \*\*\*."

That statute further provides:

"(c) the court shall consider \*\*\* any aggravating and any mitigating factors which are relevant to the imposition of the death penalty. \*\*\* Mitigating factors may include but need not be limited to the following:

1. the defendant has no significant history of prior criminal activity." (Ill. Rev. Stat. 1985, ch. 38, par. 9—1(c).)

That statute further provides that the court was required to impose the death sentence if there were no mitigating factors to preclude its imposition, but if such factors were present, then sentence was required to be imposed under Chapter V of the Unified Code of Corrections (Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—1).

Here, the trial judge sentenced the defendant to natural life and stated that "the reason I am giving natural life, as opposed to the death penalty, is due to the fact of his absence of serious involvement with any law enforcement authorities before this happened." Clearly the mitigating factor of no prior involvement with the police was considered and was the reason defendant was not sentenced to death.

We find no error in the court's omission of any reference to the statutory section under which sentence was imposed. The sentence was appropriate and within the statutory proscriptions for the defendant's murder conviction.

For all of the reasons stated, the judgment of the trial court is affirmed.

Judgment affirmed.

McNAMARA AND QUINLAN,\* JJ., concur.

---

\*Justice Quinlan participated in this opinion prior to his resignation from the court.