THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JERRY BUCKNER, Defendant-Appellant.

First District (6th Division)   No. 1—89—0762

Opinion filed September 27, 1991.

Randolph N. Stone, Public Defender, of Chicago (Shelton O. Green, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee G. Goldfarb, Guy L. Miller IV, and John J. Kim, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McNAMARA delivered the opinion of the court:

After a jury trial, defendant, Jerry Buckner, was convicted of the murder of Thomas LaCourt and was sentenced to 25 years in prison. On appeal, defendant argues that the jury was improperly instructed under *People v. Reddick* (1988), 123 Ill. 2d 184, 526 N.E.2d 141, and that such error requires reversal and entitles him to a new trial. Defendant also complains of various trial errors. However, in deciding this appeal, it is necessary to consider only the claimed *Reddick* error.

The evidence is undisputed that on the afternoon of May 23, 1987, defendant stabbed and killed the deceased outside a building at 3606 W. Sunnyside in Chicago. Defendant maintained at trial that he acted in self-defense.

James Miller and Joseph Schultz testified as eyewitnesses for the State. Miller testified that while helping Victor Melendez, the building janitor, mow the lawn in front of the building, he saw the deceased staggering around drunk, then repeatedly throw a knife at an upper window of the building. After about 30 minutes, Miller saw Melendez

take the knife from the deceased, break the blade and throw it into a garbage can which Miller subsequently moved to the side of the building near where the stabbing later occurred. About five minutes later, Miller saw the deceased motion toward an upper window and say "come on down" several times. The deceased entered the building and exited a few minutes later. Miller then saw defendant exit the building. Defendant approached the deceased, as the latter "back[ed] up out of the courtyard," moving down the sidewalk to the rear of the building in the alley. Miller saw defendant "throw a right hook" at the deceased with a beer bottle in his hand. The deceased raised his closed hands to his face in response. Defendant then stabbed the deceased in the chest with a knife. Miller did not see a weapon in the deceased's hands at the time of the stabbing. Miller did not know the deceased, nor had he seen him prior to that day.

Schultz, who lived directly across the street from the building, testified that he saw the deceased throw a knife up at an upper window of the building and scream, "I want you." He then saw Melendez take the knife from the deceased, break it and discard it. Shortly thereafter, the deceased yelled up at the window again, motioning with his fist. Defendant came outside a few minutes later and approached the deceased. Defendant "charg[ed]" as the deceased backed up. Schultz saw the deceased "put up a defense" with his hands and arms, then saw defendant swing a beer bottle with one hand, and make a thrusting movement into the chest or stomach area with the other hand. Schultz watched defendant flee with a bloody 14-inch butcher knife in his hand. Schultz did not see the deceased with a weapon.

Detective John Boyle testified for the State that an evidence technician recovered a beer bottle from the scene, although Boyle himself did not see the bottle. Neither Miller nor Schultz told him that defendant had a beer bottle, nor did his written report mention a bottle. Boyle's report indicated that Schultz told him the deceased punched defendant. Schultz later clarified this observation, characterizing the motion as more of a defensive motion than an offensive one.

Defendant testified on his own behalf that sometime after midnight on May 23, 1987, while socializing and drinking with others in the apartment of Theresa Cruz at 3606 W. Sunnyside, the deceased was cut on the hand during an argument. The deceased told defendant that he should be cut too, then swung a knife at defendant several times, cutting him on the shoulder. Defendant punched the deceased, then left the apartment. The deceased chased defendant with a knife, threatening him. Defendant ran several blocks to Diwanna Town-

send's apartment. Defendant testified that the deceased followed him there. The deceased beat on the door for about 10 minutes, threatening to kill defendant, then left. Defendant asked Townsend to call the police, and several minutes later a police car drove by but did not stop. After more than 30 minutes, defendant left to go home, taking a knife with him. As he walked to his home several blocks away, the deceased again came running after him with a knife. Defendant ran to Melendez's apartment, where defendant remained for 15 to 20 minutes and received a bandage for his cut. Defendant and Melendez then went outside and picked up debris around the apartment building. Defendant stayed near Melendez because he feared that the deceased would threaten him again with the knife. Defendant then returned to Cruz's apartment after being told that the deceased was not there. Once inside, the deceased began knocking on the door, but was not allowed to enter. The deceased returned to the front of the building and threw a knife up at the window several times and threatened defendant, saying, "I'm not through with you yet." Defendant asked Cruz to call the police and asked Melendez to take the deceased away from the window. Defendant stated that Melendez took the knife from the deceased, broke it, threw it away and told the deceased to leave.

Defendant testified that he saw the deceased walk back into the courtyard, retrieve the knife blade from the garbage can and put it in his pocket. About 20 minutes later, defendant heard someone say that the police were coming, and he left the apartment. He saw a police car approaching and unsuccessfully tried to wave it down. The deceased said, "[H]e didn't hear you. You might as well keep on running." Defendant told the deceased that he was tired of running. According to defendant, the deceased walked toward him and defendant in response walked toward the deceased. Defendant stated that the deceased punched him in the face, pulled the blade from his pocket and charged at defendant. Defendant pulled his knife out to defend himself. Defendant denied that he was carrying a beer bottle at the time.

Diwanna Townsend testified for the defense that she lived across the street from the apartment building. She stated that on the morning in question, defendant knocked on the door and she let him enter. The deceased then beat on the door, threatening to kill defendant. Townsend called the police and gave defendant a towel for his wound. When they saw a police car driving by, they left the apartment and went downstairs, but the police car did not stop. Townsend saw the deceased in the street, beating on the ground with a stick and a knife, saying that he was going to kill defendant. Townsend and defendant

returned to her apartment, and after about 20 minutes, defendant left to go home.

At the close of the trial, the trial judge instructed the jury on murder and voluntary manslaughter using Illinois Pattern Jury Instructions, Criminal, Nos. 7.02, 7.04 and 7.06 (2d ed. 1981)(hereinafter IPI Criminal 2d). The jury found defendant guilty of murder, and the trial court subsequently sentenced defendant to a 25-year prison term.

Defendant contends that the jury was improperly instructed in light of *People v. Reddick* (1988), 123 Ill. 2d 184, 526 N.E.2d 141. Defendant offered the two voluntary manslaughter instructions, IPI Criminal 2d Nos. 7.04 and 7.06, which were given *verbatim* over the State's objections. The State offered the murder instruction, IPI Criminal 2d No. 7.02, which was read *verbatim* without objection. Defendant did not allege erroneous instructions in his motion for a new trial.

In *Reddick*, our supreme court held that tendering these instructions together misstates the State's burden of proof regarding the mental state necessary to reduce a murder charge to voluntary manslaughter. (*Reddick*, 123 Ill. 2d at 194, 526 N.E.2d at 145.) The *Reddick* court found that the voluntary manslaughter instructions, when read in conjunction with the murder instruction, fail to inform the jury that the burden to disprove the mitigating mental state rests upon the State. (*Reddick*, 123 Ill. 2d at 197, 526 N.E.2d at 146.) The *Reddick* court held that the instructions constituted grave error, requiring reversal even though defendants failed to object to the instructions or raise the issue on post-trial motion.

Defendant here urges us to follow *Reddick*, reverse his conviction and grant a new trial in which the jury may be properly instructed or, alternatively, reduce his conviction to voluntary manslaughter. The State counters that defendant waived the *Reddick* issue by not raising it in a post-trial motion and further that defendant cannot now contest these instructions because he himself offered them. Additionally, the State claims that defendant waived objection because he tendered these erroneous instructions six months after *Reddick* was decided. In the alternative, the State maintains that any instructional error was harmless in light of the overwhelming evidence against defendant.

Initially, we reject the State's various arguments that defendant waived objection to the erroneous instructions. In *Reddick*, neither defendant objected to the instructions or raised it in post-trial motion and one defendant did not even raise the issue on appeal. The *Reddick* court rejected the waiver argument, stating that because instructions on the burden of proof and elements of the offense are es-

sential to a fair trial, failure to give such proper instructions constitutes grave error when the jury is not apprised of the State's burden of proof. (*Reddick*, 123 Ill. 2d at 198-99, 526 N.E.2d at 147.) Recently, in reviewing four consolidated cases involving *Reddick* errors, our supreme court again refused to apply the waiver rule even though all four defendants failed to object to the improper jury instructions, offer correct instructions or to raise the issue in a post-trial motion. *People v. Shields* (1991), 143 Ill. 2d 435.

Nor did defendant waive objection to these instructions by tendering them. Although a defendant who tenders instructions generally waives error in the instruction for purposes of appeal (*People v. Fierer* (1988), 124 Ill. 2d 176, 529 N.E.2d 972), the plain error rule applies to constitutional errors which may deny a defendant a fair trial. Because *Reddick* involves a constitutional error (*People v. Shields*, 143 Ill. 2d at 446, the plain error rule permits us to review this case.

We also reject the State's claim that defendant waived this issue because he requested these instructions more than six months after *Reddick* was handed down and, therefore, knew that they were defective. The instructional errors at issue here concern burden of proof and elements of the offense which are essential to a fair trial. (*People v. Reddick*, 123 Ill. 2d 184, 526 N.E.2d 141.) In view of the *Reddick* holding that these instructions constituted grave error, we decline to treat the issue as waived even though this trial occurred after *Reddick* was handed down. We believe that the erroneous instructions are substantial defects and the interests of justice require us to consider this question under the grave error exception to Supreme Court Rule 451(c). 134 Ill. 2d R. 451(c); *People v. Daniel* (1989), 191 Ill. App. 3d 837, 548 N.E.2d 354.

■ Although *Reddick* errors do not invariably mandate reversal or retrial (*People v. Shields*, 143 Ill. 2d at 446), constitutional errors must be shown to be harmless beyond a reasonable doubt. (*Chapman v. California* (1967), 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824.) Indeed, our supreme court has recognized that errors under *Reddick* may be harmless in appropriate cases. (See *People v. Shields*, 143 Ill. 2d at 446-47; *People v. Austin* (1989), 133 Ill. 2d 118, 123-24, 549 N.E.2d 331, 333; *People v. Harris* (1989), 132 Ill. 2d 366, 395, 547 N.E.2d 1241, 1254.) In order for an alleged constitutional error to be considered harmless, however, the State must show that the outcome of the trial would have been the same with the proper instruction. *People v. Fierer*, 124 Ill. 2d 176, 529 N.E.2d 972.

■ From our review of the record, we conclude that the use of the pattern jury instructions in this case constituted plain error. The evidence presented at trial in favor of the State was not overwhelming. The defense offered extensive testimony in support of defendant's assertion that he believed, however unreasonably, that he was justified in killing the deceased. This evidence included defendant's testimony that the deceased: repeatedly threatened to kill defendant; chased him carrying a knife from 3606 Sunnyside to Townsend's apartment, then to Melendez's apartment; and cut defendant with a knife several hours prior to the stabbing. Much of defendant's testimony was corroborated by Townsend, including the testimony that defendant sought the aid of the police. Prosecution witnesses corroborated defendant's testimony that the deceased was inebriated and that defendant had been injured. Although Miller and Schultz did not see a weapon on the deceased immediately prior to the stabbing, both witnesses saw him throw a knife at the window about one hour earlier. Further, even though Melendez broke and discarded the knife, the evidence indicates that he did so in the deceased's presence. Finally, defendant testified that he saw the deceased retrieve the knife. Even though a weapon was not found on the deceased, a properly instructed jury might have concluded, in light of the testimony presented at trial, that defendant feared for his safety and believed that the use of force was necessary to prevent death or serious harm to himself. Because the evidence was not overwhelming, we cannot conclude beyond a reasonable doubt that the erroneous jury instructions did not affect the jury's deliberations. Nor can we say that a properly instructed jury could not have concluded that defendant believed he needed to use force to defend himself, whether or not that belief was reasonable.

The State maintains that defendant failed to present sufficient evidence to justify voluntary manslaughter instructions, relying on *People v. Austin*, 133 Ill. 2d 118, 549 N.E.2d 331, *People v. Daniel*, 191 Ill. App. 3d 837, 548 N.E.2d 354, *People v. Carter* (1988), 177 Ill. App. 3d 593, 532 N.E.2d 531, and *People v. Skipper* (1988), 177 Ill. App. 3d 684, 533 N.E.2d 44. Our review of these cases, however, indicates that they are factually distinguishable from the present case.

In *People v. Austin*, our supreme court concluded that defendant failed to produce evidence that he objectively feared for his life and, therefore, that the *Reddick* error was harmless beyond a reasonable doubt. There, the unarmed victim provoked defendant by engaging in a "fairly even" fistfight for 30 or 40 seconds. Here, by contrast, the evidence suggests that the deceased, while armed with a knife, pur-

sued and threatened defendant for several hours. In *People v. Daniel*, this court ruled that the error was harmless because the State overwhelmingly proved defendant guilty of murder. Unlike here, the victim in *Daniel* never threatened defendant physically or verbally. Moreover, unlike in the present case, both defendant and a witness stated that they never saw a gun on the victim. In *People v. Skipper*, this court concluded that the evidence failed to indicate the justifiable use of force. There, the victim hit defendant in the face with a newspaper, then ran away. Defendant chased the victim with a knife. The court noted that the victim did not threaten defendant's life by hitting him with the newspaper and there was no need for defendant to chase the victim and use deadly force against him. In *People v. Carter*, this court held that the *Reddick* error was harmless beyond a reasonable doubt, concluding that defendant could not have feared for his life, either reasonably or unreasonably based upon the following: there was no evidence that the victim injured defendant; the victim was unarmed; and defendant was physically larger than the victim, whom he stabbed four times. In this case, the victim swung a knife at defendant several times and inflicted a wound on his shoulder. Moreover, unlike *Carter*, the evidence here indicates that the victim carried a knife prior to the stabbing. In sum, these cases are factually distinguishable from the present case and do not allow us to find the *Reddick* error harmless beyond a reasonable doubt.

In light of our conclusion, we need not consider the remaining issues raised by defendant.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed, and the cause is remanded for a new trial in accordance with the holdings of this opinion.

Reversed and remanded.

EGAN and LaPORTA, JJ., concur.