THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
RICHARD CEASAR, Defendant-Appellant.

First District (3rd Division)    No. 1—90—1570

Opinion filed June 17, 1992.

TULLY, J., dissenting.

Randolph N. Stone, Public Defender, of Chicago (Beth I. Solomon and Vicki Rogers, Assistant Public Defenders, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and David Stabrawa, Assistant State's Attorneys, of counsel), for the People.

JUSTICE CERDA delivered the opinion of the court:

Defendant, Richard Ceasar, appeals after a jury trial from his conviction of theft (Ill. Rev. Stat. 1989, ch. 38, par. 16—1(a)(1)). Defendant argues on appeal that: (1) the State failed to prove beyond a reasonable doubt that he committed theft; (2) the trial court erred in permitting the introduction of the hearsay evidence of a conversation; (3) his right to a fair trial was violated by the introduction of other crimes evidence; (4) the trial judge abandoned his role as an impartial party and erroneously assumed the role of advocate by giving his opinion regarding what the evidence proved; (5) the trial court failed

to advise him of the option of sentencing under the Illinois Alcoholism and Other Drug Dependency Act (Ill. Rev. Stat. 1989, ch. 111½, par. 6360—1) where the trial court had reason to believe that defendant was a drug addict; and (6) the trial court abused its discretion in sentencing defendant to a term of imprisonment greater than the maximum permissible sentence.

Ruth Qualkenbush testified at the jury trial to the following. She arrived at Midway Airport at approximately 6:30 a.m. on February 6, 1989. She had a wallet inside her purse that day, and she had a $20 bill, a $10 bill, and three $1 bills. She missed her wallet when she went to the coffee shop after taking care of her ticket. But she had other money and did not think more about it until she was taken off the plane and told someone had taken her wallet. She never saw the person who took her wallet.

David Holmes testified to the following. He was a passenger service agent for Midway Airlines. On February 6, 1989, at approximately 7:30 a.m., he had a conversation with a passenger in front of the ticket counter where he was working. After this conversation, he told a police officer that there was a pickpocket in front of the ticket counter. Holmes pointed out defendant and codefendant Jerrell Russell to the officer; the two men were standing near the exit door. Earlier, he saw codefendant bumping into people in ticket lines and defendants talking to each other.

Chicago police officer Joseph Carone testified to the following. Holmes told him that two men had picked a woman's purse, and Holmes pointed out defendants. Defendants exited the airport together at a very fast pace, and Carone pursued them. Defendants crossed the street, started running, and constantly looked back towards Carone, who was wearing his police uniform. Defendants boarded a bus, which the officer stopped and boarded. He observed defendants sitting together in the rear. Codefendant took a wallet from his pocket and dropped it on the floor. Carone recovered the wallet and took defendants back to the airport. Mrs. Qualkenbush identified the wallet as hers. Carone recovered a $20 bill, a $10 bill, and three $1 bills from codefendant but recovered nothing from defendant. Neither defendant had an airline ticket or a receipt.

The jury found defendants guilty of theft.

Defendant filed a motion for a new trial in which he argued, *inter alia*, that the State failed to prove that a theft occurred and that defendant aided a theft. The motion was denied. Defendant was sentenced to six years' imprisonment.

Defendant argues on appeal that there was no evidence supporting his conviction for theft based on accountability.

■ Defendant was charged with theft in that he "knowingly *** obtain[ed] or exert[ed] unauthorized control over property of the owner." (Ill. Rev. Stat. 1989, ch. 38, par. 16—1(a)(1).) A person is legally accountable for the conduct of another when:

> "Either before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense." (Ill. Rev. Stat. 1989, ch. 38, par. 5—2.)

The elements of accountability are: (1) defendant elicited, aided, abetted, agreed, or attempted to aid another person in the planning or commission of the offense; (2) this participation took place before or during the commission of the offense; and (3) there was a concurrent and specific intent to promote or facilitate the commission of the offense. (*People v. Valen* (1989), 183 Ill. App. 3d 571, 577, 539 N.E.2d 261.) Mere presence at the scene of a crime, even with knowledge that the crime is being committed, is not enough to prove participation. *Valen*, 183 Ill. App. 3d at 577.

■ The only evidence of defendant's possible involvement with the theft of the wallet was that he was seen with codefendant after the theft must have taken place and that he ran with codefendant to the bus upon being pursued by a police officer. That defendant was in the presence of a thief and ran from the police did not establish that he participated in or facilitated the theft.

The judgment of the circuit court is reversed.

Reversed.

RIZZI, J., concurs.

JUSTICE TULLY, dissenting:

After examining the record and briefs in this case, I am of the opinion that the decision to reverse the conviction of Richard Ceasar is in error. The basic facts of this case are that the victim in this instance had her wallet removed from her possession while purchasing a ticket at Midway Airport in Chicago. She did not realize this until later informed of the theft while on the airplane. After buying her ticket, she noted that she did not have her wallet, but having other money, she did not begin to search for it. Police officer Carone later showed her the missing wallet. She indicated that she gave no per-

mission to any of the individuals, who were subsequently charged as defendants in this case, to take her wallet or money. She did not see anyone remove her wallet. She did not see defendant Ceasar or code-fendant Russell reach into her purse, where she kept the wallet. She remembered being in a ticket line of moving people at the crowded airport, although she did not recall any particular shoving by anybody.

An agent by the name of David Holmes testified that he was employed for over six years as a service agent at the terminal area checking people in. On February 6, 1989, he was at the front counter helping passengers. At 7:30 a.m., he had a conversation with a passenger and went to the security area approximately 65 or 75 feet away to call a police officer. He told the officer that a "pickpocket" was in front of the Midway Airlines ticket counter and pointed two men out to the officer. Holmes singled out the defendant and Jerrell Russell. At that point, they were about five feet from an exit, looking towards Holmes and the officer. As the police officer walked towards them, they began to quickly walk away.

The ticket agent said that he had seen the defendant and Jerrell Russell talking with each other and walking down the line of waiting customers, bumping into people. Russell was about 5 to 15 feet away and Holmes asked him if he needed some help. Russell said that he did not. The two men left together and five minutes later, they were brought back by two police officers. The officers returned with a woman's wallet recovered from Russell and found the complainant Ruth Qualkenbush's driver's license within. Qualkenbush identified the wallet as hers.

The ticket agent did not see the defendant take the wallet, nor did he see the defendant with the wallet, or near the victim, nor did he know the name of the original person who pointed out the crime. He was, however, able to describe the defendant's clothes, gym shoes and beard. He also noted Russell had a scar near his left eye.

Officer Carone had been assigned to the eighth district and was working at Midway Airport in the security screening area when Holmes informed him that two men had taken a woman's purse and a wallet in the ticket line area. Holmes gave Officer Carone a description of two black males in dark clothing, carrying a cleaner's bag. As they approached the ticket line area, Holmes identified the defendant and Jerrell Russell, who were standing about 75 feet away. The defendant and Russell looked toward Carone and then exited at a very rapid pace.

They moved towards Cicero Avenue and started to run, crossing the street, repeatedly turning back at Officer Carone, who was about 100 to 150 feet behind. At 59th and Cicero streets they boarded a bus, but Officer Carone stopped the bus and boarded it. The two men were sitting together at the rear, Russell on the aisle seat and the defendant by the window. No other black males were on the bus. Russell took a wallet from his right-hand pocket and dumped it on the floor between his legs.

Carone removed the wallet and brought the two men back to the airport terminal. Both men were short of breath from running. Carone opened the wallet and found the victim's driver's license. Holmes identified defendant and Russell as the two men he had pointed out and left to locate the victim. The victim indicated that $33 was missing from her wallet. The exact amount was recovered in the form of a $20 bill, a $10 bill and three singles, which was the amount and the type of money that was missing from the victim. The money was in Russell's right-hand pocket. Defendant had no money at all. Neither person had airline tickets or receipts, yet they had been standing in the ticket line. During the entire incident, defendant and Russell were always together at the airport and while running or while on a bus.

Defendant Ceasar was proven guilty beyond a reasonable doubt of theft and received a sentence that was in line with the sentencing provisions of the Illinois criminal code. The court examined the defendant's criminal record and considered the length of the defendant's sentence in the Illinois Department of Corrections. The court indicated that the defendant had committed numerous crimes and that the public should be protected from him. The State had asked for the maximum extended term, noting his extensive criminal record, which included three crimes to which he had pled guilty on April 19, 1990. The first two crimes were committed while the defendant was out on bond. One was a similar theft case based on a visual account by a police officer who saw the defendant stand behind a woman in line at a restaurant, reach into the victim's purse, remove her wallet and put it in his pocket.

The evidence was not so improbable in this case that it created a reasonable doubt of defendant's guilt. (*People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267.) In *People v. Young* (1989), 128 Ill. 2d 1, 538 N.E.2d 461, the court considered, after viewing the evidence in the most favorable light to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. That was the relevant question. In *People v.*

*Rodgers* (1987), 160 Ill. App. 3d 238, 513 N.E.2d 582, the court held that in order to secure a conviction on accountability principles, the State need not show defendant's actual participation, but it must show his involvement in some fashion and a sharing of the criminal purpose underlying the defense. As to the defendant's argument that there was no evidence that a theft even occurred, it should be noted that both the defendant and Russell ran as soon as they saw the ticket agent pointing them out to the police. Both were apprehended together on the bus with the victim's wallet on the floor in full view of Officer Carone. The service agent, Holmes, had seen Russell walking down a line of customers, bumping into people. Clearly, Russell and the defendant were mutually involved with this incident.

The defendant relies on *People v. Thompson* (1975), 35 Ill. App. 3d 105, 340 N.E.2d 631, where the court held that presence at the scene of a crime coupled with knowledge that a crime was in progress was not enough to support a conviction. However, there were no eyewitnesses in that case placing the defendants at the exact scene of the crime. In the instant case, the defendant was seen bumping into people at the ticket counter, where the victim had earlier stood. Moreover, the defendants in *Thompson* did not flee upon seeing the police. This is an important distinction in this case. As to the argument by the defendant, that there was insufficient proof that he took part in this theft, the evidence shows that the defendant participated in the incident and that he took part in the ultimate criminal goal of the offense, which obviously was to take the victim's money.

Russell and the defendant were apprehended on a bus. Defendant, in fact, lives on the north side of Chicago and was at Midway Airport on the south side at 7:30 a.m. without any airline ticket or money. Certainly, these are interesting circumstances to consider. The ticket agent also testified that apart from pointing them out to the police, the defendant and Russell were seen talking to each other. Upon seeing the officer and the agent talking to each other, both left the airport and continued to flee with the police in pursuit. There was no halting or stopping by the defendant. He ran. There is no reason for a court of review to substitute its judgment for that of the trial court unless the evidence is so improbable as to raise a reasonable doubt of the defendant's guilt. *People v. Hoffman* (1970), 45 Ill. 2d 221, 226, 258 N.E.2d 326.

As to the argument by the defendant that the trial court permitted improper hearsay evidence into the case by allowing police officer Carone to testify to the general substance of his conversation with David Holmes, the service agent, the relevancy of the testimony does

not depend on the truth of the matter asserted or defendant's belief in its truth. It was never offered to show the truth of the matter asserted, but rather, to explain why the police officer approached and then pursued the defendant and Russell. The description of the defendant fit the type of crime being investigated. Police officers may properly testify about otherwise hearsay material to explain police action and investigation. *People v. Jenkins* (1989), 190 Ill. App. 3d 115, 116, 545 N.E.2d 986, 987; see also *People v. Daniel* (1989), 191 Ill. App. 3d 837, 840, 548 N.E.2d 354, 357.

Moreover, this objection was never raised at trial nor in a post-trial motion. It was raised for the first time at appeal and is, thus, waived. The evidence in this case was not so closely balanced that the verdict would have been different pursuant to Supreme Court Rule 615. Accordingly, the plain error rule would not apply in this instance. (134 Ill. 2d R. 615.) Ample evidence was presented through David Holmes and Officer Carone. The jury weighed and considered this and concluded that the defendant had committed theft. The evidence overwhelmingly proved beyond a reasonable doubt that the defendant was guilty of the crime. It is clear that the defendant aided and abetted the commission of this crime with the other person, Russell. Illinois law indicates that an individual is legally accountable for the conduct of another when his conduct complies with certain statutory requirements. (Ill. Rev. Stat. 1989, ch. 38, par. 5—2.) If accountability is defined according to the majority opinion which was utilized here, the elements of accountability are: (1) defendant enlisted, aided, abetted, agreed or attempted to aid another person in the planning or the commission of the offense; (2) this participation took place before or during the commission of the offense; and (3) there was a concurrent and specific attempt to promote or facilitate the commission of the crime.

Sufficient elements of this definition are present to hold the defendant accountable. Therefore, I would find that there is sufficient evidence to support the conviction of theft based on accountability. The State did prove that a theft occurred and that defendant aided the theft. The sentence that defendant received was proper and in line with the applicable statute. The conviction as well as the sentence of six years should be affirmed. The majority has misconstrued the law in the instant case.