2021 IL App (1st) 170744

SIXTH DIVISION
Filed March 5, 2021
Modified upon denial of rehearing March 26, 2021

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

No. 1-17-0744

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 16 CR 13558 |
| | ) | |
| DONALD PROFIT, | ) | Honorable |
| | ) | James B. Linn, |
| Defendant-Appellant. | ) | Judge Presiding. |

PRESIDING JUSTICE MIKVA delivered the judgment of the court, with opinion.
Justices Connors and Oden Johnson concurred in the judgment and opinion.

## OPINION

¶ 1     Following a bench trial, defendant Donald Profit was found guilty of attempted robbery and unlawful restraint but sentenced only on the charge of attempted robbery, for which he received four years in prison. On appeal, Mr. Profit argues (1) the evidence was insufficient to support the trial court's findings of guilt and (2) if his conviction is affirmed, he should not be required to register as a violent offender against youth. For the following reasons, we affirm the attempted robbery conviction, correct the mittimus, and find that Mr. Profit is not required to register as a violent offender against youth.

¶ 2                                   I. BACKGROUND

¶ 3     Mr. Profit was charged with aggravated attempted robbery and unlawful restraint on a

theory of accountability based on an encounter that Mr. Profit and an unidentified man had with 15-year-old Marcus Williams on June 22, 2016.

¶ 4    Marcus testified at trial that at approximately 4:15 or 4:20 p.m. on June 22, 2016, he was speaking to his aunt on the phone while walking to her car, which was parked near 61st Street and Ellis Avenue. Marcus testified that he had just turned the corner when he noticed two men—Mr. Profit and an unidentified male—walking toward him for "maybe 10 seconds." As Marcus put his phone in his pocket, the man who was not Mr. Profit grabbed Marcus's shirt and asked, "[w]hat type of phone do you have? Give it here." Marcus pulled his phone out of his pocket, said it was an iPhone 6, and the man "smacked it" out of his hand. Marcus then picked up his phone and ran to his aunt's car, where he called his mother. When he arrived home, Marcus met with Chicago police officers and made a police report about what had happened.

¶ 5    Throughout the exchange, Marcus assumed Mr. Profit had a weapon because of the position of his hand and the fact that his hand was under his shirt, as if he was trying to cover something up. According to Marcus, when the other man grabbed him, Mr. Profit "stopped." He walked toward Marcus "just about a foot—a step or two," with his hand "still in his, like, upper shirt, like, trying to hide something," and "then he walked back off."

¶ 6    On July 16, 2016, Marcus went to the police station at 51st Street and Wentworth Avenue with his mother, Ranita Mitchell. There, Marcus met with Detective Purtell and agreed to view a photo array. Marcus identified Mr. Profit from the photo array as "[t]he one that had his hand in his pants, like, assuming he had a weapon." Marcus testified that he did not know Mr. Profit before June 22.

¶ 7    On cross-examination, Marcus agreed that it was the other man with Mr. Profit who "grabbed" him. Mr. Profit was standing off to the side, did not say anything to Marcus, and did

not touch Marcus or try to take the phone from Marcus. Marcus agreed that after the other man "smacked" his phone out of his hand, Marcus was able to grab his phone and leave. Marcus thought there might have been a gun and that scared him, but he did not actually see a gun.

¶ 8      On redirect examination, Marcus demonstrated how Mr. Profit had been standing to make Marcus believe he had a gun. The court stated: "Indicating his jacket pulled up, in his right hand, his left hand in his waistband jacket hiding the top of his hand." While Mr. Profit was doing that, according to Marcus, the other person was talking to Mr. Profit with Marcus's shirt in his hand, but there was no testimony about what the other man said.

¶ 9      The trial court made its own examination of Marcus. Marcus testified that Mr. Profit and the other man were together when he encountered them, they approached him together, and they stood there together while the other man talked to Marcus and slapped the phone out of Marcus's hand. And when the two left, they left together, so they were together the whole time. Marcus repeated to the judge that the other man had asked what type of phone he had and said "give it here." Marcus again explained, "and that's when I took it out and I said, I got an iPhone 6 and that's when he smacked it out and I picked it up and ran to the car." Marcus confirmed to the judge that there was no struggle.

¶ 10     Two surveillance videos were introduced into evidence and are part of the record on appeal. We have reviewed both videos, although there is no indication in the record of the second video being presented to the judge during the trial. Marcus testified that the first video, which was recorded from across the street, truly and accurately depicts part of the encounter he had with the two men. The video shows that the entire interaction lasted only about six seconds. Marcus can be seen walking toward the right side of the screen. When he is almost to the edge of the screen, two men—the one that Marcus identified as Mr. Profit and the other unidentified man—can be seen

walking toward Marcus. As Marcus passes the two men, the unidentified man stops and can be seen turning back toward Marcus. Marcus walks backward off the right side of the screen, and the unidentified man takes a couple of steps toward him but is still visible. While this is happening, the man Marcus identified as Mr. Profit keeps walking a couple of steps towards the left side of the screen. He then stops, turns around, and takes two steps toward the other man and Marcus. The two men then turn and continue walking toward the left side of the screen, and Marcus can no longer be seen.

¶ 11    According to the timestamps on the two videos, the second video was recorded approximately three minutes after the first video ended. Mr. Profit and the same unidentified man can be seen walking together back and forth near 60th Street and Ellis Avenue for approximately two minutes until they walk off of the screen together.

¶ 12    Two detectives from the Chicago Police Department and a sergeant with the University of Chicago Police Department testified about the investigation that led to the creation of the photo array from which Marcus identified Mr. Profit, the recovery of the surveillance video, and Marcus's identifications.

¶ 13    The State rested. The defense then moved for an acquittal, and the trial court denied the request. Mr. Profit declined to testify on his own behalf, and the defense rested.

¶ 14    In its findings, the court stated that Marcus Williams had an iPhone 6 as he was walking down the street, and "Mr. Profit and another person were out there looking for some sort of trouble." The court said that "it wasn't premediated to any great degree but they did encounter Marcus Williams. There was—they walked there together. They were stopping him together and blocking his path together." The court continued:

"[T]he other person with Mr. Profit did put his hands on [Marcus] and got a little bit

physical, slapped the cell phone away. Mr. Profit was there with his hands in his waistband. The young man, Mr. Williams, was able to get the phone back and run away to the safety of his aunt and a police investigation was certainly thorough. They went to the point of getting available videos that—they were out there at the scene and making still photographs and following up with identification procedures by Marcus Williams and I found him to be a credible and compelling witness.

The conduct of Mr. Profit, although I do find that he was finding [*sic*] in concert with the other person, whether it was a gun he was threatening with or not, there were no words that were expressed about that. No gun was shown. The court is unclear as to whether it was a gun that he was hiding or pretending that he had a gun and that's part of the indictment.

So accordingly, to give some benefit of the doubt as to Count 1, he's found guilty of the lesser included offense of attempt[ed] robbery, Class 3 offense; also found guilty of unlawful restraint, a Class 4 offense, both under the One Act One Crime doctrine merging into Count 1, attempt[ed] robbery, Class 3."

¶ 15   The trial court denied Mr. Profit's motion for a new trial and sentenced him to 4 1/2 years in prison. Upon hearing that Mr. Profit had been prescribed psychotropic medication, however, the trial court found that factor to be mitigating and granted Mr. Profit's motion to reconsider his sentence in part, reducing it by 6 months to four years in prison.

¶ 16   The mittimus incorrectly reflects that Mr. Profit was sentenced to four years in prison on the offense of unlawful restraint.

¶ 17                                   II. JURISDICTION

¶ 18   Mr. Profit's motion to reconsider his sentence was granted in part and denied in part on

March 1, 2017, and he timely filed his notice of appeal that same day. We have jurisdiction pursuant to article VI, section 6, of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6) and Illinois Supreme Court Rules 603 (eff. Feb. 6, 2013) and 606 (eff. Dec. 11, 2014), governing appeals from final judgments in criminal cases.

¶ 19                                III. ANALYSIS

¶ 20                        A. Sufficiency of the Evidence

¶ 21    Mr. Profit first argues that the trial court's findings of his guilt for both attempted robbery and unlawful restraint should be reversed because the evidence was insufficient to prove him accountable for the acts of the unidentified man who actually accosted Marcus and slapped the phone from his hand. The evidence in this case was not overwhelming. And while we agree with Mr. Profit that the evidence on which the State seeks to hold him accountable was consistent with the possibility that he was not part of the crimes committed by the unidentified man, we agree with the State that viewing this evidence, as we must, in the light most favorable to the prosecution, a rational fact finder could have found it a sufficient basis on which to find Mr. Profit guilty.

¶ 22    "The State has the burden of proving beyond a reasonable doubt each element of an offense." *People v. Gray*, 2017 IL 120958, ¶ 35 (citing *Jackson v. Virginia*, 443 U.S. 307, 315-16 (1979), and *People v. Siguenza-Brito*, 235 Ill. 2d 213, 224 (2009)). "When the sufficiency of the evidence supporting a criminal conviction is challenged, '[t]he relevant inquiry is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *People v. Ramos*, 2020 IL App (1st) 170929, ¶ 57 (quoting *People v. Ward*, 215 Ill. 2d 317, 322 (2005)). "It is not the role of the reviewing court to retry the defendant," but "[r]ather, it is the responsibility of the trier of fact to resolve conflicts in the testimony, weigh the evidence, and draw reasonable

inferences from the facts." *Gray*, 2017 IL 120958, ¶ 35. Accordingly, a reviewing court will defer to the findings of the trier of fact "on questions involving the weight of the evidence or the credibility of the witnesses." *Id.* A reviewing court will only reverse a criminal conviction if "the evidence is so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of the defendant's guilt." *Id.*

¶ 23    In this case, Mr. Profit was found not guilty of aggravated attempted robbery but found guilty of both attempted robbery and unlawful restraint on a theory of accountability. A person commits robbery when "he or she knowingly takes property *** from the person or presence of another by the use of force or by threatening the imminent use of force." 720 ILCS 5/18-1(a) (West 2016). A person commits the offense of attempted robbery when he or she "does any act that constitutes a substantial step toward the commission of" attempted robbery. *Id.* § 8-4. Mr. Profit was charged with *aggravated* attempted robbery for attempting a robbery while "indicating verbally or by his *** actions to the victim that he *** [was] presently armed with a firearm or other dangerous weapon." *Id.* § 18-1(b)(1). This is an aggravated offense even if is later determined that the person did not actually have a weapon. *Id.* A person commits unlawful restraint when, without legal authority, he or she detains another person. *Id.* § 10-3(a).

¶ 24    In Illinois, a person is legally accountable for the conduct of another if "either before or during the commission of an offense, and with the intent to promote or facilitate that commission, he or she solicits, aids, abets, agrees, or attempts to aid, that other person in the planning or commission of the offense." *Id.* § 5-2(c). "Thus, to prove that a defendant possessed the intent to promote or facilitate the crime, the State may present evidence that either (1) the defendant shared the criminal intent of the principal, or (2) there was a common criminal design." *People v. Fernandez*, 2014 IL 115527, ¶ 13. "Unless the accomplice *intends* to aid the commission of a

crime, no guilt will attach." (Emphasis in original.) *People v. Shaw*, 186 Ill. 2d 301, 322 (1998). It is also true that "[c]onsent to the commission of the crime, or mere knowledge of it, is insufficient to constitute aiding or abetting," and the "mere presence of a defendant at the scene of the crime is also insufficient to make a defendant accountable, even if it is coupled with [the] defendant's flight from the scene or [the] defendant's knowledge that a crime has been committed." *People v. Johnson*, 2014 IL App (1st) 122459-B, ¶ 132.

¶ 25    The direct evidence of Mr. Profit's actions at the time of the offense came from Marcus's testimony and from the first surveillance video. Marcus said that he walked toward Mr. Profit and the unidentified man for about 10 seconds before the man grabbed Marcus's shirt. Marcus stated that Mr. Profit had his hand "under, his shirt covering something up," so he "assumed [Mr. Profit] had a weapon." When Marcus stood up to show the court how Mr. Profit had been standing, the court described it as "[i]ndicating his jacket pulled up, in his right hand, his left hand in his waistband jacket hiding the top of his hand." Marcus testified that when he was grabbed by the unidentified man with Mr. Profit, Mr. Profit stopped, then walked toward Marcus "about a foot— a step or two," and that as Mr. Profit walked toward Marcus, Mr. Profit's hand was in his "upper shirt, like, trying to hide something." Marcus also said that while the other man had Marcus's shirt in his hand, the other man was talking to Mr. Profit. Marcus acknowledged that, although he thought there might have been a gun, he did not actually see a gun.

¶ 26    Marcus further testified that Mr. Profit and the other man were together when he encountered them, they walked up together, they stood there together while the other man was talking to Marcus and hitting Marcus's hand, and they left together. The trial court specifically found Marcus to be "a credible and compelling witness."

¶ 27    Mr. Profit's argument largely relies on the surveillance video. The video shows that the

interaction was brief—six seconds—and that as the other man initially turned toward Marcus, Mr. Profit kept walking, then stopped, and turned around. When the other man walked toward Marcus, Mr. Profit took two steps toward the other man and Marcus. Mr. Profit never stood next to the other man during the interaction, and soon the two men continued walking the way they were initially headed.

¶ 28    The trial court found it significant that the two men walked together both before and after the encounter, that the other man said something to Mr. Profit during the encounter, and that Mr. Profit had his hand in his waistband during the encounter. We cannot say, based on this record, that the trial court's conclusion that Mr. Profit shared a criminal intent or had a common criminal design with his unidentified companion was "so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of the defendant's guilt." *Gray*, 2017 IL 120958, ¶ 35.

¶ 29    Mr. Profit points to the fact that the video shows the two men did not, as the trial court's ruling indicated, actually "block" Marcus's path. However, the two men did come up together, stop at almost the same time , and stood close to each other during this encounter.

¶ 30    Mr. Profit also argues that the trial court's finding that Mr. Profit was not guilty of aggravated attempted robbery showed that the court found the evidence insufficient to suggest that Mr. Profit indicated to Marcus that he was carrying a firearm. However, as the trial court said, it found Mr. Profit guilty of the lesser-included-offense of attempted robbery because it was trying "to give some benefit of the doubt" to Mr. Profit. As the trial court made clear in its ruling, he viewed Mr. Profit as aiding his unidentified companion in this encounter, regardless of whether Mr. Profit was indicating to Marcus that he was armed. As the State suggested at oral argument, Mr. Profit's actions were sufficiently menacing to make him accountable, even if the evidence did not prove beyond a reasonable doubt that he was indicating that he had a firearm or another

dangerous weapon.

¶ 31   Mr. Profit argues, in his petition for rehearing, that the trial court improperly found him accountable based on his mere presence and association with the unidentified man and that this court may have implicitly expanded the law of accountability by affirming the trial court. However, we made clear in our initial opinion and we reiterate now: mere presence and association is never enough to find a defendant accountable for another person's criminal actions. But in this case, the trial court's factual finding, to which we must defer unless no reasonable trier of fact could have reached this conclusion, was that Mr. Profit's conduct evidenced more than his presence and association with the unidentified man, but a shared criminal intent or a common criminal design.

¶ 32   The cases on which Mr. Profit relies—*People v. Taylor*, 219 Ill. App. 3d 47 (1991), and *People v. Ceasar*, 231 Ill. App. 3d 54 (1992)—are distinguishable. The court in *Taylor* found the evidence was not sufficient for a finding of guilt by accountability because the defendant's codefendants in that case both "testified that when they got together that evening they had no plans" and "[n]o evidence was presented showing that the defendant knew where they were going or that he knew his friends might" commit the offense they did. *Taylor*, 219 Ill. App. 3d at 50. Here, there was no direct evidence as to what plans the two men had, so the trial court properly relied on the circumstantial evidence of their shared intent.

¶ 33   In *Caesar*, the court found that "[t]he only evidence of [the] defendant's possible involvement with the theft *** was that he was seen with [the] codefendant after the theft must have taken place," ran away with the codefendant, and was found by the pursuing police officer sitting next to the codefendant on a bus. *Ceasar*, 231 Ill. App. 3d at 56. In this case, by contrast, Mr. Profit was with the unidentified man before, during, and after the encounter with Marcus.

¶ 34    After considering all of the testimony, together with the videos, and deferring as we must to the findings of the trier of fact, we find the evidence sufficient to support the trial court's finding that Mr. Profit was guilty, on the basis of accountability, for his unidentified companion's attempted robbery in this case.

¶ 35    Both parties also make arguments as to whether the evidence was sufficient to support the court's finding Mr. Profit guilty of unlawful restraint. However, the trial court did not impose a sentence on that finding of guilt. It is well established that where a sentence is not imposed on a finding of guilt, there is no final judgment. *People v. Flores*, 128 Ill. 2d 66, 95 (1989). And our supreme court has made clear that our ability to address such a nonfinal judgment is "limited to ordering a remand for imposition of [a] sentence[ ]" on it. *People v. Relerford*, 2017 IL 121094, ¶ 75. Accordingly, we will not address the sufficiency of the evidence as to the unlawful restraint finding.

¶ 36                      B. Correction of the Mittimus

¶ 37    Mr. Profit next argues that his mittimus should be corrected to show a single conviction for attempted robbery and that, because this was his only conviction, he should not be required to register under the Murderer and Violent Offender Against Youth Registration Act (Act) (730 ILCS 154/1 *et seq.* (West 2016)). The State concedes that Mr. Profit's mittimus should be corrected and that no conviction was entered for unlawful restraint but argues that Mr. Profit is nonetheless required to register under the Act because he was "convicted" of the unlawful restraint of Marcus, who was 15 years old at the time of the offense.

¶ 38    According to the mittimus, Mr. Profit was sentenced on the offense of unlawful restraint. But "[w]hen the oral pronouncement of the court and the written order are in conflict, the oral pronouncement controls." *People v. Jones*, 376 Ill. App. 3d 372, 395 (2007). So, first, we agree

with the parties that the mittimus should be corrected to reflect a single conviction for attempted robbery. Although the court found Mr. Profit guilty of both unlawful restraint and attempted robbery, it merged the unlawful restraint charge into the attempted robbery charge. When the court proceeded to sentencing at a later date, it was only on the charge of attempted robbery.

¶ 39    The question, then, is whether a finding of guilt on an unsentenced offense requires Mr. Profit to register under the Act. This is a question of statutory interpretation we review *de novo*. *People v. Giraud*, 2012 IL 113116, ¶ 6.

¶ 40    The Act requires any person who qualifies as a "violent offender against youth" to register with the police for 10 years from the date of his or her release from prison. 730 ILCS 154/5(a), 40 (West 2016). The Act defines a "violent offender against youth" as a person who is charged with the commission or attempted commission of certain " 'violent offense[s] against youth' "— including the unlawful restraint of someone under 18 years of age (*id.* § 5(b)(1))—and "is *convicted* of such offense or an attempt to commit such offense." (Emphasis added.) *Id.* § 5(a)(1)(A). Attempted robbery is *not* one of the enumerated offenses in the Act. *Id.*

¶ 41    The statutory language is clear: Mr. Profit was required to register under the Act if he was "convicted" of unlawful restraint. In interpreting the statute, the first thing we look to is the plain language:

> "[O]ur inquiry must always begin with the language of the statute itself, which is the surest and most reliable indicator of the legislature's intent. [Citation.] When the language of a statute is clear, it must be applied as written without resort to further aids or tools of interpretation. [Citation.] Furthermore, criminal or penal statutes are to be strictly construed in favor of the accused, and nothing should be taken by intendment or implication beyond the obvious or literal meaning of the statute. [Citation.]" (Internal

quotation marks omitted.) *People v. Taylor*, 221 Ill. 2d 157, 162 (2006). "A court must view the statute as a whole, construing words and phrases in light of other relevant statutory provisions and not in isolation." *People v. Clark*, 2019 IL 122891, ¶ 20.

¶ 42    Although the Act itself does not define the word "convicted," the Unified Code of Corrections (Code) defines a "conviction" as "a judgment of conviction or sentence entered *** upon a verdict or finding of guilty of an offense, rendered *** by a court of competent jurisdiction authorized to try the case without a jury." 730 ILCS 5/5-1-5 (West 2016). The Code further defines "judgment" as "an adjudication by the court that the defendant is guilty or not guilty, and if the adjudication is that the defendant is guilty, *it includes the sentence* pronounced by the court." (Emphasis added.) *Id.* § 5-1-12.

¶ 43    In this case, Mr. Profit was found guilty of unlawful restraint, a charge that the trial court merged into the charge of attempted robbery. Mr. Profit was only sentenced on the attempted robbery charge, and thus, Mr. Profit was only *convicted* of attempted robbery. See *People v. Salem*, 2016 IL App (3d) 120390, ¶¶ 45-47 (finding a guilty plea that had not resulted in a sentence or final judgment of conviction did not count as a conviction for impeachment purposes); *People v. Lashmett*, 126 Ill. App. 3d 340, 345-46 (1984) (concluding that a federal jury verdict of guilty, before posttrial motions or sentence, was not a conviction for impeachment purposes).

¶ 44    While the legislature may have intended that a defendant who was found guilty of a violent offense against youth should be required to register, even if that defendant was not ultimately sentenced on the otherwise qualifying charge, we cannot speculate as to legislative intent. Rather, "[i]f we can determine the legislative intent from the plain language of the statute, we will give *that* intent effect without resorting to other interpretive aids." (Emphasis added.) *People v. Roberts*, 214 Ill. 2d 106, 116 (2005). And, here, the plain language of the statute is clear: only a defendant

*convicted* of a violent offense against youth is required to register. Mr. Profit was not convicted of such an offense, and thus, he is not required to register.

¶ 45    In support of its argument that Mr. Profit should still be required to register, the State relies on language in the Act that states, "[c]onvictions that result from or are connected with the same act, or result from offenses committed at the same time, shall be counted for the purpose of this Act as one conviction. Any conviction set aside pursuant to law is not a conviction for purposes of this Act." 730 ILCS 154/5(a)(2) (West 2016). According to the State, because the trial court found that the unlawful restraint was part of the same act as the attempted robbery, the Act "requires that [Mr. Profit] be registered."

¶ 46    The language that the State relies on does not support its argument. The Act requires that defendants must register where they have been *convicted* of a qualifying offense. Although Mr. Profit found guilty of unlawful restraint, he was not sentenced on that offense. Thus, he was not "convicted" of unlawful restraint. As such, Mr. Profit was not convicted of a qualifying "violent offense against youth" and cannot be required to register under the Act.

¶ 47                                    IV. CONCLUSION

¶ 48    For the foregoing reasons, we affirm Mr. Profit's conviction for attempted robbery. We correct his mittimus to reflect that he was convicted of one count of attempted robbery, not unlawful restraint. Because Mr. Profit was not convicted of a violent offense against youth, he is not required to register as a violent offender against youth under the Act. Accordingly, the mittimus should indicate that Mr. Profit is not required to register under the Act, and we direct the trial court to transmit copies of the corrected mittimus to the Illinois Department of Corrections and the Illinois State Police so that he is removed from the registry.

¶ 49    Affirmed; mittimus corrected with directions.

**No. 1-17-0744**

| | |
|---|---|
| **Cite as:** | *People v. Profit*, 2021 IL App (1st) 170744 |
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 16-CR-13558; the Hon. James B. Linn, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, Ian R. Jackson, (Sarah Free, law student), of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Brian K. Hodes, and Tristan M. Hinriksson, Assistant State's Attorneys, of counsel), for the People. |